431 So.2d 396 (1983)
Mary A. BUTLER
v.
Ruth Daniels REDDICK a/k/a Ruth Daniels Riddick.
No. 82-C-2108.
Supreme Court of Louisiana.
April 4, 1983.
Rehearing Denied May 13, 1983.
*397 Clarence F. Favret, Jr., New Orleans, for applicant.
Frank S. Bruno, Jerry J. Blouin, Stephen P. Bruno, New Orleans, for respondent.
WATSON, Justice.
The issue is whether George Arthur Johnson made a valid manual inter vivos donation to Ms. Ruth D. Reddick of $49,970.80 in a joint bank account.

FACTS
George Arthur Johnson was once married to Hilla Wise West, the daughter of Ms. Reddick. After the two separated about 1960, Johnson remained in New York where he resided with his mother until the latter's death in July of 1974. In September of that year, Johnson moved to New Orleans. Ms. Reddick picked him up at the airport and he stayed with her. Subsequently, on October 11, 1974, the funds Johnson had in a New York bank were transferred to an account at the Hibernia National Bank in New Orleans. It is undisputed that the $49,970.80 deposited in the savings account belonged to Johnson but was deposited in the joint names of Mr. George A. Johnson or Mrs. Ruth D. Reddick. In parenthesis on the bank signature card is a notation "to buy property". Ms. Reddick did not recall the source of that notation. Ms. Reddick did purchase a house in 1975.
While Johnson resided with Ms. Reddick, she took him to the Veterans' Hospitals in New Orleans and Gulfport for treatment of high blood pressure. Various withdrawals were made from the Hibernia account between November 8, 1974, and April 24, 1975. According to Ms. Reddick "he [Johnson] did not want to have anything to do with it [the money] because I took care of him." (Tr. 33, 34) On May 1, 1975, while Johnson was in the hospital, Ms. Reddick withdrew the balance of $46,971.38. Ms. Reddick initially denied that decedent had been in the hospital at the time of the last withdrawal. She insisted that Johnson had resided with her when she transferred the funds but later admitted when questioned about her prior deposition that he had been in the hospital at the time.
Another account in the Colonial Bank was established on June 16, 1975, in the amount of $444.47. It was in the names of George Johnson or Mrs. Ruth D. Riddick. Ms. Reddick said "he [Johnson] didn't know that money [in the Colonial Bank] was coming." (Tr. 31) On June 7, 1976, the balance in that account of $498.35 was withdrawn by Ms. Reddick. Arthur Johnson died on June 9, 1976, two days later, of hypertensive cardiovascular disease. Ms. Reddick denied that she had made the withdrawal before Johnson's death and said the death certificate must be wrong. Ms. Reddick said the Colonial funds came from a different source than those in the Hibernia *398 account and she did not keep the Colonial money. Her uncontradicted testimony was that she gave these funds to Johnson's aunt, Ms. Butler, at Johnson's wake to pay for the funeral.
According to Ms. Reddick, Johnson intended from the beginning to give her the money in the Hibernia account, but she insisted that his name also be on the account. Johnson accompanied her on most of the occasions when she withdrew money from the account. Ms. Reddick bought cigarettes and clothing for Johnson with some of the money she withdrew. At the time of his death, Johnson resided with his aunt, Mary Ann Butler, the plaintiff and administratrix of his succession.
Ms. Reddick said that Johnson stayed with her through 1975, except when he was in the hospital, and went to live with his aunt after one of his hospitalizations. Ms. Reddick said that this move was less than a year before Johnson's death, but she did not know exactly how long he had been with his aunt. Johnson's aunt, Ms. Butler, was not allowed to testify about what Johnson told her concerning the bank account.
The trial court concluded that Johnson intended to donate the funds in the Hibernia account to Ms. Reddick and that the manual donation was completed when she converted those funds to her sole possession. Plaintiff's suit was dismissed.
The court of appeal affirmed on the ground that the circumstances testified to by Ms. Reddick corroborated her testimony that Johnson wanted her to have the money. Butler v. Reddick, 416 So.2d 332 (La. App. 4 Cir.1982). The court of appeal relied on Succession of Miller, 405 So.2d 812 (La., 1981) which it found could not be distinguished from the present case. A writ was granted to review the judgment of the court of appeal. 422 So.2d 151 (La., 1982).

CONCLUSION
LSA-C.C. art. 1539 provides:
"The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
Decedent Johnson established a joint savings account with Ms. Reddick.
"As concerns the funds in the savings account, while it is true that the savings account, or the right to the funds therein, is an incorporeal movable, and thus as such not subject to manual gift, the cash, withdrawn from the savings account, is a corporeal movable and subject to manual gift provided there was actual delivery of the funds." Succession of Miller, 405 So.2d at 818.
Succession of Miller held that when the donor's will to give and the donee's physical possession of the movable property (cash in a joint savings account) operated simultaneously, there was sufficient delivery to constitute a valid inter vivos manual donation. The court of appeal opinion here errs in stating that, at the time of the last withdrawal, when decedent was in the hospital, he repeated that he wanted Ms. Reddick to have the money.[1] At no point in her testimony did Ms. Reddick state that when decedent was in the hospital at the time of the last withdrawal he specifically said that he wanted her to have the money. Thus, there is a significant distinction between Miller and the instant case, because there is no evidence that the will of Johnson to give and Ms. Reddick's actual possession of the money operated simultaneously.
In Miller, there was no question that Ms. Miller wanted her cousin to have her property. Although Ms. Miller was comatose when her cousin withdrew the funds in the joint account and completed the donation, there was no evidence that Ms. Miller might have had a contrary intention at the time the donation was completed. The strong evidence in Miller that Ms. Miller intended a donation at the time that Ms. Meyer withdrew the funds is missing here.
Absent here are the many circumstances in Miller which corroborated the donor's *399 intention. On the Miller account, after the two signature names, there was a statement in parenthesis "payable to either or survivor". Here, the notation on the signature card said that the funds were intended for the purchase of property. Although Ms. Miller's written will was technically invalid, it left everything she possessed to her cousin, the donee. The will expressed great gratitude to that cousin. The donee, Ms. Meyer, cared for Ms. Miller until her final hospitalization, whereas Johnson left Ms. Reddick to live with his aunt.
Overlooked by the court of appeal here is the requirement stated in Succession of Woolfolk, 225 La. 1, 71 So.2d 861 (1954):
"... The burden of proving the donation is on the donee and under the decisions of this Court, the proof to support the donation must be strong and convincing." (emphasis added) 71 So.2d 864.
Here, there is no corroboration of a donative intent, only the self-serving testimony of the donee that Johnson wanted her to have the money. "[T]estimony as to the oral declarations ... of a dead man are of... little weight, ..." Succession of Zacharie, 119 La. 150, 43 So. 988 at 990 (1970). Ms. Reddick admitted that she made purchases for Johnson with the funds in the account. Since Johnson was in and out of the hospital and unable to handle his own financial affairs, the joint account alone does not establish a donative intent. During one of Johnson's hospitalizations, Ms. Reddick withdrew the balance in the bank account and converted it to her own use. After this or a subsequent hospitalization, Johnson did not continue to reside with Ms. Reddick but went to live with his aunt. It is suspicious that most of the funds were transferred while Johnson was in the hospital and Ms. Reddick tried to deny that fact. While she said she had a poor memory, a date when she withdrew almost $47,000 from the bank should have been clear in her mind.
The trial court and court of appeal erred in finding a valid manual donation of decedent's funds on the basis of the flimsy evidence presented here.[2]

DECREE
The judgment of the court of appeal is reversed and it is ordered that plaintiff, Mary Ann Butler, have judgment against defendant, Ruth Daniels Reddick, and her survivors in the sum of $46,971.38.[3]
REVERSED AND RENDERED.
NOTES
[1] "... [A]t the time of the last withdrawal decedent was in the hospital but repeated that he wanted her to have the money." 416 So.2d at 333.
[2] Strong equitable considerations may justify a judicial exception to the requirement of actual physical delivery. Such exceptions have only been made when the evidence of donative intent was very strong. See the cases cited in Succession of Miller: Succession of Gorman, 209 La. 1092, 26 So.2d 150 (1946); Gibson v. Hearn, 164 La. 65, 113 So. 766 (1927); Succession of Zacharie, supra.
[3] Ms. Reddick's children, Barbara Warren, Helois Jenkins and William West, were substituted as defendants after Ms. Reddick's death.