597 So.2d 91 (1992)
SUCCESSION of Amelia Hooper, Widow of Mitchel SERIO.
No. 91-CA-1113.
Court of Appeal of Louisiana, Fourth Circuit.
March 31, 1992.
Writ Denied July 1, 1992.
Donald V. Organ, F. Kelleher Riess, Eugene F. Pollingue, Jr., New Orleans, for Michael F. Serio.
Nick F. Noriea, Jr., Gainsburgh, Benjamin, Fallon, David & Ates, New Orleans, for Jack A. Serio.
*92 Before WARD and ARMSTRONG, JJ., and ALVIN RUDY EASON, J., Pro Tem.
WARD, Judge.
The resolution of this appeal turns on whether Mitchel Serio, husband of Amelia Serio, made a donation of promissory notes that he signed as maker; and if there was a donation, did Mitchel Serio create a community debt, making the Succession of Amelia Hooper Serio liable for one-half of it. Jack Serio, Mitchel's nephew, claims he is the owner of the notes by virtue of the donation, and that the succession of Amelia, his aunt by marriage, owes him for one-half of the unpaid balance due on the notes. Amelia left a will naming her nephews Jack and Michael Serio, Jack's brother, as her heirs. Michael Serio, who will be called "Mike" to avoid confusing him with his uncle Mitchel, has intervened in the Succession, contesting the debt Jack claims is due. If the Succession must pay one-half the balance due on the notes as a community debt then succession assets will be reduced correspondingly and Mike's share will be reduced by one-half of the balance due. In general Michael contends that his uncle did not make a donation because Mitchel did not intend to make a donation to Jack, and even if Mitchel had that intention, the donation was not consummated because there was never a manual delivery of the notes to Jack.
The trial court rendered a judgment which we will describe later but which was based upon its findings that Mitchel Serio did not intend to donate the promissory notes to Jack Serio, and if he did, then the donation was not consummated because there was a lack of delivery.
We affirm, because we hold that the trial court was not manifestly erroneous in its findings of fact.
Many years ago Mitchel and Amelia Serio opened a delicatessen in the central business district of New Orleans. They both worked hard and the delicatessen was a success; such a success, that Mitchel and Amelia were able to acquire investment property, including a hotel across from the delicatessen. Mitchel and Amelia did not have children, but early in the 1970's they brought Mitchel's nephews, Jack and Mike, into the business. Jack and Mike both worked long hours and many days, and Mitchel and Amelia treated them as sons. So close were the nephews to their aunt by marriage that Amelia made a will naming them as her only heirs.
In 1984, years after Jack and Mike came to work, Amelia's physical and mental health began to deteriorate, and Mitchel found that he must commit her to a nursing home and ask the Courts to interdict her. Jack and Mike assumed more participation in the operation of the delicatessen and became active in management of the investment property.
During this time when Jack and Mike were managing the real estate, Mitchel allegedly discovered Mike had stolen money from the business, diverting revenues to his own use. Whether true or not is unimportant, what mattered was that Mitchel believed it, and he fired Mike and changed his will to exclude Mike and to make Jack his sole heir. Because Amelia had been interdicted, her will could not be changed to remove Michael as an heir.
Mitchel Serio died in September, 1988; Amelia died three months later in the nursing home where she lived. There is no issue in this appeal related to Mitchel's succession, apparently Jack is the sole heir, Mike receives nothing. Jack is the dative testamentary executor of his aunt's succession and testamentary executor of his uncle's succession, and as we have said above, while Jack is the sole testamentary heir to his uncle's succession, he is a joint testamentary heir with Mike to their aunt's succession.
After Mitchel and Ameilia's deaths, Jack successfully petitioned the Court in his uncle's succession proceeding to pay himself $180,700.00 as "urgent debts". Jack presented the Court with twelve promissory notes signed by his uncle and payable to Jack. There was one note dated for each year after the first one dated November 4, 1977 for $6,000.00. The other eleven notes were each in the amount of $10,000.00 and called for interest of either 9 or 10%. The *93 1977 note provided for maturity 100 years after date. The remaining notes, with the exception of the last two which were demand notes, provided a maturity five years after date.
Instead of paying the $180,700.00 from Mitchel's succession, Jack paid himself from Amelia's assets. Upon learning of the payment of "urgent debts", Mike filed proceedings in Amelia's succession requesting the court to order Jack as executor to amend the descriptive list of assets to include a claim against Jack as a debtor for the $180,700.00. The trial court entered a judgment ordering the amendment after rejecting Jack's claim that Amelia's succession owes him one-half of the unpaid balance of the notes as the Succession's community debt.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it, La.C.C.Art. 1468. The resolution of this case both in the trial court and in this appeal turns on questions largely of fact both as to whether Mitchel Serio had a donative intent and whether he divested himself irrevocably of the notes. Did he intend to create a debt in favor of Jack, irrevocably? The burden of proof is upon the donee, and the proof must be strong and convincing. Succession of Woolfolk, 225 La. 1, 71 So.2d 861 (1954); Butler v. Reddick, 431 So.2d 396 (La.1983).
The Legislature by Act 452(1) of 1982, La.R.S. 10:3-201(4), eliminated the need for an authentic act for donations of negotiable instruments, making donations inter vivos subject to the Commercial Laws of Louisiana, R.S. 10:1-101 et. seq. 10:3-201(3) says a transfer of the instrument vests in the transferee such rights as the transferor has therein. "Delivery" is defined with respect to instruments, to mean "voluntary transfer of possession, actual or constructive, from one person to another." La.R.S. 10:1-201. Thus under the Commercial Law a transferor with donative intent to divest himself of a negotiable promissory note may make a valid donation by delivery of the instrument. Nonetheless, under Louisiana jurisprudence delivery here means relinquishing control or dominion over the property and placing it within the control or dominion of the doneeirrevocably. Bergeron v. Bergeron, 411 So.2d 1183 (La.App. 4 Cir.1982), Succession of Diffey, 543 So.2d 131 (La.App. 2d Cir.1989), Succession of Ruth Helen Young, 563 So.2d 502 (La.App. 4th Cir.1990), writ denied 568 So.2d 1055.
The are several facts herein which amply support the findings of the trial court and negate proof of a donative intent and deliverydivestment of dominion, control, but the most telling facts are that the promissory notes remained for all those years in the delicatessen, which still belonged to Mitchel, who did not relinquish control of the business or the premises. Jack said his uncle had access to everything in the place. Although several of the notes matured, Jack did not take steps to collect the note nor the interest due. The appropriate standard for reviewing findings of fact of the trial court is the manifest error standard. Considering that Jack has such a heavy burden of proof the record supports both findings of fact by the trial court.
Trying to control him (Mr. Serio) was like trying to steer your car without a horn, you've got about the same result. You could not control him. (p. 107 Transcript of December 27, 1990 hearing).
At the January 11, 1991 hearing of this cause, the trial judge commented while ruling that the promissory notes executed by Mitchel Serio in favor of Jack Serio were not valid:
I did not know Mitchell (sic) Serio very well and did not come in contact with the man very often, but my own personal experience with the man, which I cannot honestly divorce myself from, my feelings toward him were more positivelet me indicate that, but he was a genuine character, and my feelings about that character as testified in this courtroom just indicates to me that they were used more in the nature rather than as bona fide intent to givebecause there was no delivery. I cannot get around that non-delivery. I'm sorry. That is just the way I feel about it. (p. 50, Transcript of *94 January 11, 1991 hearing) (emphasis added).
Further, the Court stated:
I just don't believe there was delivery. The fact that he did nothe just said flashed them to him. I mean, my father was the same way, because my father flashed things to me and said `I'm doing all this', and, you know, he never had any intent to do it. (p. 51, Transcript of January 11, 1991 hearing).
Although there is some merit to Jack's complaint that the trial court erroneously took judicial notice of facts, particularly from his knowledge of and acquaintance with Mitchel Serio, the entire record supports his findings of fact and we cannot say that his personal acquaintance with the character of Mitchel Serio was a trial error that led to erroneous findings of fact.
In this appeal Jack raises for the first time the argument that the donation was not gratuitous but was a remunerative donation, given for services Jack had performed for Mitchel and Amelia. Suffice it to say that those arguments are not supported by the record, and since they were not made in the trial court they will not be further considered here.
On the other hand Mike argues several other grounds for denying Jack's claim against Amelia's estate, and they have apparent merit. For example, Mitchel Serio could not make a donation of his wife's share of the community property (or create a community debt) without Amelia's approval. The donation of community property to a third party requires the concurrence of the spouses. Jeffer Investments Inc. v. Anna Lee, 511 So.2d 1169 (La. 4th Cir.1987). There is nothing to show she approved, and as a matter of fact she was interdicted during the time some notes were allegedly transferred.
For the foregoing reasons, the judgment of the lower court is affirmed. The costs of the appeal are assessed to Jack Serio.
AFFIRMED.