662 So.2d 538 (1995)
Paul F. DASTUGUE, Jr.
v.
Sharon FERNAN and Aucoin-Hart Jewelers, Inc.
No. 95-CA-394.
Court of Appeal of Louisiana, Fifth Circuit.
October 18, 1995.
Rehearing Denied November 17, 1995.
*539 C. Ellis Henican, Jr., Henican & Brown, New Orleans, and John A. Mmahat, Mmahat & Associates, Ltd., New Orleans, for Plaintiff/Appellant, Paul F. Dastugue.
Julian R. Murray, Jr., Chehardy, Sherman, Ellis, Breslin & Murray, Metairie, and Carl J. Selenberg, Metairie, for Defendant/Appellee, Sharon Fernan Henry.
Before BOWES, GRISBAUM and GOTHARD, JJ.
BOWES, Judge.
Plaintiff, Paul F. Dastugue, filed this lawsuit against his ex-wife, Sharon Fernan Henry (hereinafter "Ms. Fernan"), and Aucoin Hart Jewelers, seeking the return of an engagement/wedding ring he gave to Ms. Fernan on the date of their marriage.
Both defendants filed exceptions of prescription which were denied by the trial judge. Defendant, Aucoin Hart, subsequently settled with the defendant, leaving Ms. Fernan as the remaining defendant in the lawsuit. After trial on the merits, the court rendered judgment in favor of the defendant, denying plaintiff's claim against her. Plaintiff appeals, alleging that the trial court committed error in ruling that plaintiff had donated the ring to defendant subsequent to the parties' divorce. Defendant also filed a motion for appeal, contending that the trial judge erred in overruling the exception of prescription. We affirm the decision of the trial court finding that a second donation of the ring was made by plaintiff.

FACTS
Mr. Dastugue and Ms. Fernan were married on or about October 4, 1986. At that time, Mr. Dastugue presented Ms. Fernan with an engagement/wedding ring that the parties had selected a short time before. This ring had been purchased from Aucoin Hart Jewelers for $10,730.00. The parties agreed to remain separate in property and entered into a prenuptial agreement to that effect. Subsequent to the marriage, Mr. Dastugue made three payments on the ring, each in the amount of $1,788.33. The last payment was made on January 6, 1987, leaving an outstanding balance of $5,365.01.
In March of 1987, Mr. Dastugue filed for Chapter 11 bankruptcy. On October 3, 1987, Ms. Fernan left the matrimonial domicile, and on February 9, 1988 Mr. Dastugue was granted a legal separation on the ground of abandonment.
Shortly after leaving the matrimonial domicile, Ms. Fernan returned the ring to Aucoin Hart. At that time, Aucoin Hart offered her a store credit for the amount of the partial payment which had been made toward the purchase price of the ring. Ms. Fernan refused the credit; Aucoin Hart took the ring and gave her a receipt indicating that they were holding it. Ms. Fernan testified at trial that not long after that, Dastugue called her and asked about the ring. When she told him that she had returned the ring to Aucoin Hart, he seemed to be satisfied.
In December of 1988, the Chapter 11 bankruptcy proceeding was converted into a Chapter 7 proceeding. The ring was listed as an asset in Mr. Dastugue's bankruptcy and the outstanding balance of $5,365.01 *540 owed to Aucoin Hart was listed as a debt sought to be discharged.
On January 20, 1989, a judgment of divorce between the parties was rendered. In February, 1989, Dastugue wrote to Ms. Fernan telling her that he had attempted to get partial refund on the ring, a request that Aucoin Hart refused, explaining that there was a question of ownership concerning the ring. In this letter, Dastugue enclosed a statement which he directed Ms. Fernan to sign, which acknowledged that he was the owner of the ring. However, Ms. Fernan refused to sign the statement.
On May 1, 1989, Mr. Dastugue was discharged in bankruptcy and on October 5, 1989, the bankruptcy trustee abandoned any claim to the ring. Mr. Ronald Hof, who represented Mr. Dastugue in the bankruptcy proceeding, testified at trial that he told the bankruptcy trustee that the ownership of the ring was in dispute.
On March 25, 1990, Mr. Dastugue wrote the following letter to Ms. Fernan:
SHARON AND THE RING
My offer refused
to allow you to release the ring and forever end the bond that joined us in first an ecstasy and then a prison perceived.
T'was on your terms which you will not honor now.
A contract that you did make and I did willingly agree.
So now it is my move and I fast agree the ring is yours and I am free but you the one now bound.
Only some is learned in our grand contract of which this ring is but a part.
So we will see the other again at another time for lessons overdue that must be had lest we not move on to greater things.
For a while I made you well. Until you thought our Karma*s end did come.
When you left you took our fears with youmine in grief are gone, yours did stay in freedom's name.
Ego has no need to be in God'splan [sic] for we are all one and know the other as ourselves if we but let.
But free to change we must let ourselves bein change with our permission is our constant freedom born.
Oh, how I could help, and so willingly offer if the key were simply presented and trepidation put aside.
Meanwhile forgiveness takes the day and is the healing prescribed.
My wish is that this be received as it is sent and separation's pain removed.
Paul
3/25/90
At the trial on this matter, he testified that this letter was a merely a poem to her and that he did not intend to donate the ring to her at that time.
Ms. Fernan testified at trial that, after receiving this letter, she believed that Dastugue was abandoning his claim to the ring. Ms. Fernan took the letter to Aucoin Hart who concurred in this belief. Subsequently, Ms. Fernan was issued a $5,000.00 credit by Aucoin Hart representing the partial payment made to them. She consumed this credit over the next year.
In March of 1991, Ms. Fernan received a letter from Dastugue's attorney threatening a lawsuit if she did not return the ring. On December 30, 1991, Mr. Dastugue instituted this suit, naming both Ms. Fernan and Aucoin Hart as defendants.
Aucoin Hart settled with Mr. Dastugue for the amount of $3,000.00. Upon learning of the settlement agreement, Ms. Fernan returned to Aucoin Hart approximately $5,000.00 in jewelry she had purchased from the store through the earlier credit given her by them when she had returned the ring. Accordingly, at the time this matter was tried, Ms. Fernan was not in possession of the ring, nor of any credit or jewelry purchased with the credit, and, in fact, she had received nothing of the value of the ring.

ANALYSIS
In this appeal, Mr. Dastugue first argues that the trial judge erred in failing to rule on the issue of whether the initial donation of the ring, in contemplation of marriage, was revoked by operation of law when Ms. Fernan was found at fault in the break-up of the marriage.
*541 Dastugue then argues that the trial court erred in finding that the letter of March 25, 1990 was a valid second donation. After review of the legal issues applicable herein, we can find no manifest error in this decision of the trial court. Accordingly, we find that the question of whether the initial donation of the ring, made in contemplation of marriage, was revoked by Ms. Fernan's fault in the break up of the marriage is irrelevant to this matter.
In our review of the findings of the trial court, we are bound by the manifest error rule and may not set aside the factfinder's factual conclusions unless they are clearly wrong or manifestly erroneous. Ambrose v. New Orleans Police Amb. Serv., 93-3099, 93-3110, 93-3112 (La. July 5, 1994), 639 So.2d 216; Rosell v. ESCO, 549 So.2d 840 (La.1989). The issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Stobart v. State through DOTD, 617 So.2d 880 (La.1993). In this case, the trial court made a factual finding that Mr. Dastugue made a second donation of the ring to Ms. Fernan subsequent to the breakup of the marriage.
La.C.C. art. 1539 provides:
The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.
When the donor's will to give and the donee's physical possession of the movable property operate simultaneously, there is a sufficient delivery to constitute a valid manual donation inter vivos. Butler v. Reddick, 431 So.2d 396 (La.1983); Succession of Miller, 405 So.2d 812 (La.1981).
The donee bears the burden of proving donative intent and such proof must be strong and convincing. In addition, it has been held that donative intent is a factual issue. Montet v. Lyles, 93-1724 (La.App. 1 Cir. 6/24/94), 638 So.2d 727.
For purposes of a donation inter vivos, delivery is defined as relinquishing control or dominion over property and placing it within the dominion of the donee, irrevocably. Brown v. Brown, 635 So.2d 255 (La. App. 3 Cir.1994); Succession of Serio, 597 So.2d 91 (La.App. 4 Cir.1992), writ denied, 600 So.2d 677 (La.1992).
In this case, Ms. Fernan deposited the ring with Aucoin Hart. When asked to sign a document relinquishing ownership to Dastugue by his letter to her, supra, she refused, and the ring remained in the actual possession of Aucoin Hart with her permission until after the letter of March 25, 1990. Thus, it is clear that the ring was in her "dominion" at the time of the letter.
To show Dastugue's intent, a copy of the letter was introduced at trial. Dastugue argues that this was merely a poem and, that from reading same, it is clear that he did not intend to donate the ring. We disagree. The document at issue is typed on Dastugue's letterhead. These words clearly state "the ring is yours ..." and the general tone of the letter is one of forgiveness. A rational trier of fact certainly could have found that this letter or poem expresses a clear intent to donate the ring.
Dastugue, in his brief, makes much of the fact that he presented an expert in poetry to testify to the meaning of poems, to support his allegation that the "poem" did not express an intent to donate the ring to Ms. Fernan. However, the trial judge must weigh expert testimony as it weighs any other evidence and is not bound by it. Bourgeois v. Roudolfich, 580 So.2d 699 (La.App. 5 Cir.1991). In this case, the trial judge considered the testimony of all concerned and the language of the letter, and determined that, at the time the letter was sent, Mr. Dastugue intended to donate the ring to Ms. Fernan.
In addition, we note that the evidence presented at trial also established that, prior to the letter, the ring was removed as an asset in Dastugue's bankruptcy proceedings and the debt he owed to Aucoin Hart was discharged in bankruptcy. Considering these facts, along with the language of the letter, it could have reasonably been inferred, and concluded by the trial judge, that, once Dastugue was no longer obligated to pay for the *542 balance owned on the ring, he no longer wished for its return.
Accordingly, we find no manifest error in the ruling of the trial court finding a valid donation of the ring to Ms. Fernan subsequent to the breakup of the marriage.
Ms. Fernan filed a cross appeal, apparently in an abundance of caution, in which she alleges that the trial court erred in failing to rule on the issues of whether she acquired ownership of the ring by acquisitive and/or liberative prescription. Since we affirm the decision of the trial court declaring that a valid donation of the ring was made subsequent to the break up of the marriage, we need not reach this issue.
For the above discussed reasons, the judgment of the trial court dismissing plaintiff's action is affirmed. All costs are assessed against plaintiff/appellant, Paul F. Dastugue.
AFFIRMED.