I,MURRAY, Judge.
This is a petition to recover succession assets. Defendant, Vivian Werling Guar-isco, appeals the trial court’s judgment finding that the assets in question are property of the estate. For the following reasons, we affirm.
FACTS
This suit was commenced by Caroline Werling Kitchen in her capacity as ad-ministratrix of the successions of Sophie Cunningham widow oi/and Alvin Louis Werling. Although Mr. Werling died on August 8, 1982, his succession was not opened until after Mrs. Werling died in August 1994. During their marriage, Mr. and Mrs. Werling had three children: one son (who is not a party to this dispute) and two daughters, Ms. Guarisco (the defendant) and Ms. Kitchen (the plaintiff-succession administratrix).
On February 9, 1990, Mrs. Werling and Ms. Guarisco opened four identical certifi *113 cates of deposit at Whitney National Bank. Each certificate was in the amount of $1,000.00 and was issued in the names of Mrs. Werling and Ms. Guarisco. On July 1, 1994, Mrs. Werling and Ms. Guarisco opened another certificate of deposit at the Whitney in the amount of $4,536.18 and in the names of Mrs. Werling “or” Ms. Guar-iseo.
1 ^During this same period, Mrs. Werling and Ms. Guarisco also opened a checking account together at the Whitney in the names of Mrs. Werling “or” Ms. Guarisco. This balance in this account on June 30, 1993, was established at trial to be $5,824.52. Mrs. Werling also had a personal checking account at First National Bank of Commerce (“FNBC”) that was solely in her name. On both August 4 and 5, 1994, Mrs. Werling wrote a check from that account payable to Ms. Guarisco in the amounts of $2,000.00 and $1,500.00, respectively. On each check, Mrs. Werling noted the purpose to be for bills.
On August 7, 1994, Mrs. Werling died. Shortly thereafter, Ms. Kitchen became administratrix of the successions of both her parents, Mr. and Mrs. Werling. In that capacity, she learned that on February 24, 1995, her sister, Ms. Guarisco, cashed in the five certificates of deposit and the checking account at the Whitney Bank that had been opened in the names of both Ms. Guarisco and Mrs. Werling. After unsuccessfully requesting that Ms. Guarisco return the funds she withdrew from those accounts to the estate, Ms. Kitchen, in her capacity as administratrix, commenced this suit.
Following a trial on the merits, the trial court found the accounts in question belonged to the decedent, Mrs. Werling, and that the proceeds of the accounts were properly included in the gross patrimony of the decedent’s estate. The trial court thus rendered judgment against the defendant in the amount of $26,335.35, plus legal interest and costs. The trial court further ordered that plaintiff, as succession representative, could deduct from any succession proceeds owed to defendant any sums due plaintiff as a result of this judgment. From that judgment, Ms. Guarisco appeals.
JjDISCUSSION
This case presents solely a factual issue of ownership of funds withdrawn from various bank accounts.[1] We can reverse only if the trial court was manifestly erroneous in determining that the decedent rather than the defendant was the owner of these accounts. Stobart v. State of La., Through Dep’t of Transp. and Dev., 617 So.2d 880 (La.1993). In reviewing the trial court’s factual finding “the issue to be resolved is ... not whether the trier of fact was right or wrong, but whether the factfinder’s conclusion was a reasonable one.” Stobart, 617 So.2d at 882.
Defendant argues that the trial court erred in finding plaintiffs hearsay testimony regarding the source of the funds in the accounts credible. Defendant further argues that as the party seeking to establish ownership of the funds, plaintiff had the burden of proof and that plaintiff failed to meet that burden. We disagree.
*114 As the trial court noted in its written reasons, plaintiff established at trial that the Whitney Bank accounts in question shared the following features: (i) the accounts were all in the names of Sophie C. Werling and Vivian W. Guarisco; (ii) the accounts all listed the decedent’s name as the lead name; (iii) the accounts all bore the decedent’s Social Security number as the federal tax identification number; (iv) all the 1099 statements on the accounts were sent to decedent’s home address; (v) the decedent reported all the interest income on the accounts on her tax returns; and (vi) the accounts all listed as the owner/contact address decedent’s |4home address. Based on these factors, the trial court determined that the “decedent consistently treated these accounts as her own from the time the accounts were opened until her death.” We agree, and we add that plaintiffs establishment of these factors sufficed to shift the burden to defendant.
In finding defendant failed to offer any evidence that the money belonged to her, the trial court stressed defendant’s failure to offer any explanation as to the source of the funds used to establish the accounts. At trial, defendant simply testified that the money in the account was her money. When asked why she opened these accounts with the decedent, defendant responded:
“I was a single parent, and I had no one to take care of my daughter if anything happened to me. And, my mother did not feel comfortable getting into a legal situation with all kinds of documentation. And, at the same time my mother was not well. I was taking care of her as best I could. And, it was just easier for us to place this money and take the money I had, place it into an account with both our names on it. ... It was set up so that [my mother] would have access to something if something happened to me. I had no one to take over any of my things or to manage my daughter. And, my daughter was still in college at that time. So, that’s why we set up the accounts and that’s why my name was on them. And, it was my money originally ...”
The trial court contrasted defendant’s testimony, which it found “vague” and “self serving,” with plaintiffs testimony, which it found “detailed” and “credible.” Particularly, the trial court noted that plaintiff testified the decedent told her the money in the account was hers and that the source of the money was two-fold: (1) from Mrs. Werling’s predeceased husband, and (2) from Ms. Werling’s severance package from D.H. Holmes, where she was a long-time employee. As to the latter, plaintiff indicated that her mother received stock and had converted some of the stock. The trial court thus held that the funds in the accounts belonged to the 1 .^decedent’s estate. We hold that factual finding was reasonable and thus not manifestly erroneous. Stobart, supra.
Given our finding that the funds in question belong to the decedent’s estate, we must address defendant’s alternative argument that the amount of the judgment awarded against her was erroneous. Defendant emphasizes that the trial court never explained in her oral or written reasons or the judgment the calculation used to arrive at the ultimate amount awarded of $26,335.35. Rather, the record reflects that the source of that figure was plaintiffs attorney who simply mentioned that figure at the end of the trial and who incorporated that figure into the final judgment. More importantly, even plaintiff acknowledges that the amount in the judgment is incorrect. Plaintiff, however, argues that there was simply a mathematical error in calculating the amount and *115 attempts to support a slightly lower figure as the correct amount.
Based on our review of the record, we conclude, as defendant contends, that the correct amount defendant withdrew from the accounts belonging to the decedent equals the amount of the cashier’s check the Whitney Bank issued to defendant on February 24, 1995, which is $15,641.61. The record reflects that the amount of the cashier’s check was arrived at by combining three separate withdrawals. First, it included the four $1,000.00 certificates of deposits, which were cashed in for a total of $4,949.36 ($1,237.34 each times four). Second, it included the fifth certificate of deposit, which was cashed in for $4,534.59. Third, lfiit included the checking account from which defendant withdrew $6,159.15.[2] The difference between the $26,335.35 awarded in the judgment and the amount of the cashier’s check ($15,641.61) is $10,693.74. That differential apparently is attributable, as defendant points out, to mistakenly including two of the withdrawals twice. The two withdrawals that were included twice were the fifth certificate of deposit ($4,534.59) and the withdrawal from the checking account ($6,159.15), which total $10,693.74.
In an attempt to establish a larger correct amount, plaintiff argues that defendant received three other amounts besides the $15,641.61 cashier’s check. First, plaintiff argues that the FNBC checks dated August 4 and 5,1994, that Mrs. Werling wrote payable to Ms. Guariseo in the amounts of $2,000.00 and $1,500.00, respectively, were intended to be included in the judgment. We disagree. On each check, Mrs. Werling noted the purpose to be for bills. That notation was supported by the sole testimony at trial regarding these two checks; specifically, Ms. Guariseo testified that the checks were repayment for bills she had paid on her mother’s behalf.
Second, plaintiff argues that defendant received $5,824.52 by closing a Whitney account. The record reflects that this figure was the balance of the Whitney checking account as of June 30, 1993. Although defendant testified at trial that she withdrew the funds from that checking account, as noted above, the |7funds in that account withdrawn on February 24, 1995 ($6,159.15) were included in the cashier’s check defendant received.
The final amount plaintiff seeks to add is $1,237.34, which plaintiff contends defendant received by closing another Whitney Bank account. The record reflects that amount is identical to the amount each of the four $1,000.00 certificates of deposits were cashed in for on February 24, 1995. We find no support for plaintiffs argument that defendant received an additional $1,237.34.
Accordingly, we find the total amount defendant withdrew from the accounts that belonged to the estate is $15,641.61.

DECREE

For the foregoing reasons, we amend the trial court judgment to lower the amount of the judgment to $15,641.61. In all other respects, we affirm.
AFFIRMED AS AMENDED.

. We recognize that some of these accounts were "or" accounts. While that distinction is relevant for banking law, it is not dispositive of the ownership issue presented here. To the extent Ms. Guarisco relies on banking laws, such as La. R.S. 6:317, in support of her claim of ownership, her reliance is thus misplaced. Such statutory provisions merely relieve "banks of liability in disputes between joint account holders.” Cantrell v. Pat O'Briens Bar, Inc., 97-0545, p. 4, 705 So.2d 1205, 1207 (La.App. 4th Cir.1998). "The right of withdrawal is not tantamount to ownership in Louisiana." Id.

. A nominal fee of $1.49 was charged for the cashier's check.