# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 10-525

## SUCCESSION OF MILTON ELIE

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TENTH JUDICIAL DISTRICT COURT
PARISH OF NATCHITOCHES, NO. 14534, DIVISION B
HONORABLE DEE A. HAWTHORNE, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Billy Howard Ezell, and David E. Chatelain\*, Judges.

**AFFIRMED.**

**Marvin F. Gahagan**
**Gahagan and Gahagan**
**Post Office Box 35**
**Natchitoches, LA   71458**
**(318) 352-2827**
**COUNSEL FOR APPELLEE:**
  **Trinette LaShande Elie**

**Edward Larvadain, Jr.**
**626 Eighth Street**
**Alexandria, LA   71301-7696**
**(318) 445-6717**
**COUNSEL FOR APPELLANTS:**
  **Betty Jones**
  **Schrieta Jones**
  **Mildred Elie**

---

\* Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

AMY, Judge.

The succession administratrix sought to recover funds withdrawn by the decedent's sister from a joint banking account. The decedent's mother and sister joined in a separate action against the succession seeking funds to pay for the decedent's mother's care. The trial court issued judgment finding that the decedent's sister was not entitled to the funds formerly in the joint bank account. It further held that the decedent's mother had no cause of action against the succession. The decedent's mother and sister appeal. For the following reasons, we affirm.

## Factual and Procedural Background

Milton Elie (Milton) died intestate on April 15, 2009, in Natchitoches, Louisiana. He was survived by one heir, Trinette Leshande Elie (Trinette), a daughter born during his marriage to Joann Nelloms Elie (Joann). The marriage between the two ended in divorce in 1983. At the request and consent of Trinette, following Milton's death, the trial court appointed Joann as the succession's independent administratrix on May 15, 2009. Trinette filed a sworn detailed descriptive list of her father's assets which included a piece of immovable property located in Natchitoches and a Bank of Montgomery checking account. This dispute arises over the ownership and disposition of that checking account.

The record reveals that Milton opened the account solely in his name on December 28, 2004, with an initial deposit of $192,540.00. At some point before his death, Milton added his sister, Betty Jones (Betty), to the account. Betty alleges that she gave money to Milton for safekeeping against her abusive husband. She asserts that she initially gave Milton $25,000.00 and continued to add to this amount periodically.

After Milton's death, and before Joann was appointed as administratrix, Betty withdrew the remaining funds of the checking account in the amount of $100,125.02. The record reveals that Betty paid Milton's funeral expenses in addition to some of his outstanding debts in the amount of $11,842.76. Joann, as administratrix, sought from Betty the remaining balance of the account: the $100,125.02 minus the $11,842.76 expenses. However, Betty returned only $38,220.34 to the succession, asserting that $50,000.00 of the $100,125.02 belonged to her.[1]

On July 30, 2009, the administratrix filed a rule to show cause why Betty should not return to the succession the entire sum of $100,125.02. Betty answered, again asserting that the $50,000.00 was her money she had given to her brother for safekeeping. Attached to her answer was a document she alleges was found in Milton's nightstand after his death which was prepared and signed by Milton as an intended will. Betty does not allege that the "nightstand document" meets the necessary legal formalities to be considered a proper will, rather, she asserts that it is proof that she is entitled to the $50,000.00. The document reads, in pertinent part, as follows:

> The checking account that is located at Bank of Montgomery, Derry branch that I am co-owner with my sister Betty Jones is only one half mine. My portion is to pay for any expenses due upon my death, my final bills due and any money left over on my half shall go to my sister Betty Jones, my niece Schrita Jones, to care for my mother Mildred Elie needs and my two great-nieces MaKayla and Mariah Jones. The other half of the money in the checking account belongs to my sister Betty Jones.

In addition to filing an answer, Betty, joined with Schrita Jones, Milton's niece, and Mildred Elie, Milton's mother, filed a "Petition to Regain the Sum of $38,320.40

---

[1] The trial court noted in its reasons for judgment that the three amounts "$11,842.76, $50,000.00, and $38,220.34, total $100,063.10, which is $61.92 less than the $100,125.02 originally withdrawn from the account." It further noted that "Neither party has raised this discrepancy."

Tendered." The petition sought to have the money Betty had earlier tendered to the succession returned to them "to be used to provide for food, clothing, shelter, and health care of Mildred Elie, mother of Milton Elie and his two nieces."

Following a hearing, the trial court found in favor of the succession and against Betty Jones for $50,000.00. Further, the trial court found that Betty, Mildred and Schrita had no cause of action in the petition for the $38,320.34, and ordered that the money, which was being held by counsel for the succession, be turned over to the independent administratrix for the benefit of Milton's succession.

Betty appeals, challenging the trial court's finding that she did not prove her ownership of the $50,000.00. Further, Betty asserts that the administratrix did not sustain her burden of proving the funds belonged to Milton. Betty and Mildred[2] also appeal the trial court's judgment that they did not have a cause of action against Milton's succession.

## Discussion

*Betty's Claim to the $50,000.00.*

Betty first asserts that the administratrix/mover did not meet her burden of proving the disputed funds belonged to Milton. She argues that, at the hearing on the rule, the only evidence introduced by the administratrix was a document showing Milton's initial deposit of funds. Next, Betty argues that the trial court erred in finding that she did not prove her ownership of the disputed funds.

In Louisiana, funds deposited into a joint bank account remain the property of its original owner and his or her estate at death, absent an authentic act of donation. *Succession of Fralick v. Sec'y of Dept. of Revenue*, 529 So.2d 159 (La.App. 3

---

[2] The record indicates that although a plaintiff in the original petition, Schrita Jones does not join in this appeal.

3

Cir.1988). The right of withdrawal, or having one's name listed on the account, is not

tantamount to ownership. *Id.*; *See also Cantrell v. Pat O'Briens Bar, Inc.*, 97-545

(La.App. 4 Cir. 1/7/98), 705 So.2d 1205. Thus, Betty had to prove her ownership of

$50,000.00. A reviewing court may not set aside a trial court's finding of fact absent

manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840

(La.1989). Further, a trial court's credibility determinations are entitled to great

deference. *See Hebert v. Rapides Parish Police Jury*, 06-2001, 06-2164 (La.

1/16/08), 974 So.2d 635 (on rehearing).

In its reasons for ruling, the trial court stated its findings, in pertinent part as

follows:

> The Court does not accept this document [the "nightstand document"] as authentic or credible, much less as evidence of Milton's intent. This questioned document does not provide any information regarding the balance in the account on May 15, 2005, when Milton supposedly wrote this document. Furthermore, bank balances fluctuate and it is implausible to believe that the bank account maintained a balance of $100,000.00 at all times, $50,000.00 of which supposedly belong to Betty. There are no bank records to indicate what the bank balance was on the date of the questioned document, nor are there any bank records to indicate the account name changed from "Milton Elie" to "Milton Elie or Betty Jones." Betty has simply failed to prove this essential information.

> After listening carefully to the witnesses, observing their demeanor, and conscientiously considering all the facts, the court does not find the testimony of the witnesses to be reliable, nor is it supported by any physical evidence. Furthermore, the Court has disregarded the "nightstand document" and finds that it provides no proof to Milton's intent, if in fact his intent were relevant. Betty has failed to offer credible evidence which identifies or traces the funds allegedly belonging to Betty.

After review, we find that the record supports the trial court's determination

that Betty did not prove entitlement to $50,000.00 of the funds in the bank account.

Betty testified at the hearing that she gave money to Milton for safekeeping,

4

beginning with an initial $25,000.00 deposit. She further testified that she added to this amount periodically. However, Betty offered no bank records of any deposits that purportedly represented this money. At the hearing, Ethel Berryman Elie, Milton's sister-in-law, testified that she saw Betty bring Milton a "little brown paper bag" filled with cash for him to deposit in the account. Madie Lou Pierson, an ex-girlfriend of Milton, also testified that she would see Milton and Betty go to the bank together, and that Milton told her numerous times that he was keeping money in the account for Betty. Both testified that $50,000.00 of the money in the account belonged to Betty, however, neither of the women could identify an amount of any of Betty's deposits.

On the other hand, at the hearing, the succession entered into evidence the certificate of deposit which opened the account in question. The document dated December 28, 2004, lists Milton Elie as the account owner. It lists the "initial deposit" as $192,540.00. As stated earlier, funds deposited in a joint bank account remain the property of its original owner and his estate at death, absent an authentic act of donation. *Succession of Fralick*, 529 So.2d 159.

In light of the reasons above, we find no manifest error in the trial court's determination that Betty did not prove her entitlement to $50,000.00 of the money in the account.

*Mildred's Claims*

Mildred, Milton's mother, asserts that the trial court erred in finding that she did not have a cause of action against Milton's succession and in determining that the succession owes no duty to support her. In brief, she argues that "Milton Elie, during his lifetime, set aside funds for his mother as the dutiful and caring son he was and,

5

therefore, she is entitled to the $38,220.34." In a post-trial memoranda, Mildred asserts that under La.Civ.Code art. 229, she, as a mother in necessitous circumstances, can seek benefits from a decedent who has the financial resources to provide.

Louisiana Civil Code Article 229 provides:

> Children are bound to maintain their father and mother and other ascendants, who are in need, and the relatives in the direct ascending line are likewise bound to maintain their needy descendants, this obligation being reciprocal. This reciprocal obligation is limited to life's basic necessities of food, clothing, shelter, and health care, and arises only upon proof of inability to obtain these necessities by other means or from other sources.

While Mildred argues that the succession has a duty to provide for her support, she cites to no jurisprudence wherein La.Civ.Code art. 229 supports a cause of action for an ascendant against a succession, as opposed to the descendant personally. Here, it is not in dispute that Milton died without a valid will. Thus, according to La.Civ.Code art. 880,

> In the absence of valid testamentary disposition, the undisposed property of the deceased devolves *by operation of law* in favor of his descendants, ascendants, and collaterals, by blood or by adoption, and in favor of his spouse not judicially separated from him, in the order provided in and *according to the following articles*.

(Emphasis added.) Further, La.Civ.Code art. 229 is not encompassed in the articles following La.Civ.Code art. 880, or in any provision of the Civil Code regarding successions. Additionally, while Mildred argues that Milton "set aside funds" for her care, she cannot point to a valid testamentary disposition to that effect. Accordingly, it was not error for the trial court to find that Mildred did not have a cause of action against Milton's succession for the return of the money.

6

**DECREE**

The judgment of the trial court is affirmed. All costs of these proceedings are assessed against defendants-appellants, Betty Jones and Mildred Elie.

**AFFIRMED.**