**STATE OF LOUISIANA**
**COURT OF APPEAL, THIRD CIRCUIT**


**22-817**


**SUCCESSION OF CAROLYN GAUTHIER BARGEMAN**

**VERSUS**

**GEORGE BARGEMAN AND ETTA D. BARGEMAN**


**\*\*\*\*\*\*\*\*\*\***


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 61-912
HONORABLE G. MICHAEL CANADAY, DISTRICT JUDGE


**\*\*\*\*\*\*\*\*\*\***


**CHARLES G. FITZGERALD**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***


Court composed of Candyce G. Perret, Charles G. Fitzgerald, and Guy E. Bradberry, Judges.


**REVERSED AND RENDERED.**

**Kody Cannon**
**John-Michael Lomzenski**
**Sigler Arabie & Cannon**
**630 Kirby Street**
**Lake Charles, Louisiana  70601**
**(337) 439-2033**
**Counsel for Plaintiff/Appellant:**
    **Drusilla A. Jones, as Executrix of the**
    **Succession of Carolyn Gauthier Bargeman**

**La Koshia R. Roberts**
**1011 Lakeshire Drive, Suite 402**
**Lake Charles, Louisiana  70601**
**(337) 436-3308**
**Counsel for Defendants/Appellees:**
    **George Bargeman**
    **Etta D. Bargeman**

**FITZGERALD, Judge.**

This appeal stems from a dispute as to the ownership of the funds held in five joint bank accounts.

**FACTS AND PROCEDURAL HISTORY**

In essence, Drusilla Jones, in her capacity as the executrix of the Succession of Carolyn Gauthier Bargeman, filed suit against the defendants, George Bargeman and Etta Bargeman, seeking to have the disputed funds classified as estate assets.

Carolyn died testate in March 2022. Carolyn's spouse, Willie Bargeman, died eight years earlier in June 2014. A judgment of possession in Willie's succession was signed in September 2014. That judgment recognized Carolyn as the sole owner of three Capital One bank accounts. A few months later, in November 2014, Carolyn opened two more Capital One accounts. At that time, all five Capital One accounts were registered in Carolyn's name alone.[1]

Two years later, in November 2016, Carolyn added her brother-in-law, George, and his wife, Etta, as additional joint account holders on all five accounts. The estimated cumulative balance of the accounts at that time was $303,954.86. Carolyn died five years later. At the time of her death, the accounts had an estimated balance of $291,209.05. The dispute before us concerns the ownership of the funds in these five accounts: the Succession argues that the funds belong solely to Decedent's estate; George and Etta, on the other hand, argue that they are entitled to a portion of the funds as joint owners.

In May 2022, the Succession filed suit against George and Etta. Trial was held on September 8, 2022. At the close of evidence, the trial court took the matter

---

[1] The accounts consisted of two checking accounts, two savings accounts, and one certificate of deposit.

under advisement. The trial court then issued written reasons on September 16, 2022, and a written Judgment was signed on September 29, 2022. In short, the trial court found that each party—the Succession, George, and Etta—owned an equal one-third interest in all account funds.

The Succession appealed, asserting four assignments of error:

(1)     The trial court erred as a matter of law and fact in concluding that there was a transfer of legal ownership of the funds held in the Accounts upon George's and Etta's addition as co-owners upon execution of signature cards by the Decedent in November 2016.

(2)     The trial court erred as a matter of law in not analyzing if the Decedent intended to irrevocably donate an interest in the funds held in the Accounts to George and Etta upon their addition as co-owners to the Accounts in November 2016.

(3)     The trial court erred as a matter of law and fact in concluding that the Accounts were owned in indivision and presumption of co-ownership was not rebutted under La. C.C. art. 797, upon finding of fact that Decedent was the only owner of account who made deposits into the account and that George's and Etta's only use of the account was the use of funds held in the Accounts to pay for the Decedent's care and expenses.

(4)     The trial court erred as a matter of law in concluding that the Accounts were subject to La. R.S. 6:1255(A) and that its provisions were dispositive of ownership of the funds held in the Accounts to George and Etta upon the Decedent's death.

## LAW AND ANALYSIS

*Third Assignment of Error*

In determining ownership of the contested account funds, the trial court first had to decide whether the Succession rebutted the presumption of co-ownership under La.Civ.Code art. 797. Thus, we begin our analysis by reviewing the Succession's third assignment of error: whether the trial court erred in finding that the presumption was not rebutted. And we review this assignment using the manifest

2

error-clearly erroneous standard. *Sylvester v. Fontenot*, 10-1115 (La.App. 3 Cir. 3/9/11), 58 So.3d 675.

Louisiana Civil Code Article 797 provides that "[o]wnership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal." A different panel of this court addressed this article in *Sylvester*, 58 So.3d at 681-82 (citations omitted), explaining as follows:

> As can be ascertained from the final sentence of Article 797, there is a presumption that a joint bank account is owned in equal shares by each depositor. That presumption can be rebutted by appropriate evidence. However, the deposit of funds into a joint account does not by itself effect a transfer of the ownership of those funds.

In *Sylvester*, the joint account at issue was registered in both plaintiff and defendant's names. The plaintiff in that case testified that the deposited funds consisted entirely of her separate property. The defendant disagreed, testifying that her separate funds had also been deposited into the account. Hence, the source of the account funds was disputed. On this evidence, the trial court found that the presumption of co-ownership had not been rebutted. And this finding was affirmed on appeal.

By contrast, in *Kitchen v. Guarisco*, 01-1016, pp. 3-4 (La.App. 4 Cir. 2/20/02), 811 So.2d 112, 114, the plaintiff-administratrix overcame the presumption of co-ownership by establishing that

> (i) the accounts were all in the names of [the decedent] and [her daughter] Vivian W. Guarisco; (ii) the accounts all listed the decedent's name as the lead name; (iii) the accounts all bore the decedent's Social Security number as the federal tax identification number; (iv) all the 1099 statements on the accounts were sent to decedent's home address; (v) the decedent reported all the interest income on the accounts on her tax returns; and (vi) the accounts all listed as the owner/contact address decedent's home address.

3

According to the fourth circuit, the "plaintiff's establishment of these factors sufficed to shift the burden to defendant." *Id*.

Similarly, the trial court in the matter before us made the following findings of fact:

> Here, the evidence established that [Decedent] was the only joint owner who made deposits to the account. The funds so deposited came from her Social Security payments. However, at the time they were added to the accounts, [Decedent] told George and Etta Bargemen that they would be co-owners of the account and could use the funds to take care of her. They thereafter acted as her caretakers for the following five years, until her death in 2022. George and Etta Bargemen made no deposits into the account. However, George and Etta Bargemen made the withdrawals from the account, for use as [Decedent's] caretakers and paying her bills for her.

The trial court's findings were based on the record evidence, which consists of witness testimony, bank statements, account summaries, account signature cards, Decedent's probated will, and two Form 1099s reflecting interest payments for the years 2019 and 2020. And this evidence shows that George and Etta were added as joint account holders on Decedent's accounts in November 2016, that Decedent was the sole owner of all funds in the accounts at the time George and Etta were added, that Decedent was subsequently the only named joint account holder who made deposits into the accounts, that Decedent's monthly income from her employment as a nursing assistant continued to be deposited into the accounts, that Decedent's monthly Social Security benefits continued to be deposited into the accounts, that the accounts bore Decedent's Social Security number as the federal tax identification number, that Decedent reported all interest income on the accounts on her tax returns, that Decedent used the funds held in the accounts for the payment of her recurring monthly expenses, that George and Etta's withdrawals were never used for their personal expenses, that George and Etta's withdrawals were used only for the

4

care of Decedent and the payment of her expenses, that Decedent executed her Last Will and Testament in February 2022, and that Decedent bequeathed the bank account funds to her three nieces.

Additionally, the Succession presented testimony that Decedent had no children, that George and Etta were added to the accounts in the event Decedent became incapacitated, and that George and Etta assisted Decedent in managing her affairs when her health deteriorated. Even George admitted that Decedent was the sole owner of all account funds from November 2016 until her death in March 2022.

Based on all this, we conclude that the trial court clearly erred in determining that the Succession did not rebut the presumption of co-ownership under La.Civ.Code art. 797.

*First, Second, and Fourth Assignments of Error*

Once the presumption of co-ownership was overcome by the Succession, the burden at trial shifted to George and Etta to prove that they had an ownership interest in the account funds. To this end, George and Etta could have presented evidence that their separate funds were deposited into the accounts. But George conceded that this never happened. It is also undisputed that none of the accounts designated George or Etta as a payable-on-death beneficiary, meaning that the account funds did not pass as non-probate assets. And finally, neither George nor Etta is a legatee in Decedent's will, meaning that ownership of the subject funds was not transferred by donation mortis causa. So George and Etta were left with one option: proving that Decedent transferred an ownership interest to them by inter vivos donation. This brings us to the Succession's remaining assignments of error.

The Succession asserts that the trial court erred in concluding that ownership of the account funds transferred to George and Etta when Decedent executed the

5

account signature cards and thus added them as joint account holders in November 2016. The Succession also asserts that the trial court erred in failing to determine whether ownership was transferred by inter vivos donation. And in its final assignment, the Succession asserts that the trial court erroneously applied La.R.S. 6:1255(A). All three assignments have merit.

In its written reasons, the trial court found that ownership was transferred to George and Etta in November 2016 because Decedent was "an intelligent woman who understood her actions" and that the "papers [signature cards] that were provided to [Decedent] at the time she added George and Etta to the accounts were clear and laid out the information necessary for an understanding of what a joint account was and the effects of that type of account." In support, the trial court pointed to La.R.S. 6:1255(A), which states as follows:

> If two or more persons opening or holding a withdrawable account shall execute a written agreement with the savings bank providing that the account shall be payable to any one of them or the survivor of them, the account, and any balance thereof which exists from time to time, shall be held by them as joint owners, and, unless otherwise agreed, any payment by the savings bank to any of such persons shall be a complete discharge of the savings bank's obligation as to the amount so paid. A pledge of such account by any holder or holders including minors authorized to withdraw amounts from such accounts shall, unless otherwise specifically agreed, be a valid pledge and transfer of the account and shall not operate to sever or terminate the joint and survivorship ownership of all or any part of the account.

At the outset, we note that the trial court failed to apply the correct law. More particularly, La.R.S. 6:1255(A) immunizes financial institutions from liability for distributing account funds to a joint account holder; the statute is not dispositive of ownership, nor does it affect the application of relevant donation laws. The correct law is La.Civ.Code art. 1468 (donations inter vivos). In short, the trial court legally erred in applying La.R.S. 6:1255(A); the trial court legally erred in concluding that

Decedent's execution of account signature cards constituted a transfer of ownership; and the trial court legally erred in failing to determine whether ownership was transferred by inter vivos donation. Because these legal errors are inherently prejudicial, we will determine de novo whether Decedent intended to irrevocably donate to George and Etta an ownership interest in the account funds.

Louisiana Civil Code Article 1468 states that "[a] donation inter vivos is a contract by which a person, called the donor, gratuitously divests himself, at present and irrevocably, of the thing given in favor of another, called the donee, who accepts it." Article 1468 sets forth four essential elements for a valid gratuitous donation inter vivos: (1) the present divesting of a thing by the donor, (2) the irrevocable divesting of a thing by the donor, (3) the giving of a thing by the donor to the donee, and (4) the acceptance of the donation by the donee. Elements (1) through (3) pertain to divestment and donative intent. However, the form requirements for this type of donation must also be met. And importantly, the burden of proving the donation is on the donee, and the proof to support the donation must be clear and convincing.[2]

---

[2] Many cases require strong and convincing evidence. However, "clear and convincing" and "strong and convincing" evidence refer to the same burden of persuasion. *Compare Succession of Woolfolk*, 71 So.2d 861 (La.1954), with *Talbot v. Talbot*, 03-814 (La. 12/12/03), 864 So.2d 590. In *Talbot*, 864 So.2d at 598, the supreme court provided the following statement of law:

> In civil cases, a party who has the burden of proof must prove the fact in issue by a preponderance of the evidence, and not by some artificially created greater standard. *Lasha v. Olin Corp.*, 625 So.2d 1002, 1005 (La.1993); *Jordan v. Travelers Ins. Co.*, 257 La. 995, 245 So.2d 151, 155 (1971); *McCormick on Evidence* § 339, at 421 (5th ed.1999). Only in exceptional controversies is the clear and convincing standard applied in civil cases "where there is thought to be special danger of deception, or where the court considers that the particular type of claim should be disfavored on policy." *McCormick, supra*, at 421; *Succession of Lyons*, 452 So.2d [1161, 1165 (La.1984)]. The clear and convincing standard requires a party to prove the existence of a contested fact is highly probable, or much more probable than its non-existence. *McCormick, supra*, at 421; *Succession of Lyons*, 452 So.2d at 1165.

In *Butler v. Reddick*, 431 So.2d 396 (La.1983), the Louisiana Supreme Court concluded that the mere fact that funds were placed into a joint account did not establish the decedent's donative intent, and it reversed the trial court's finding to the contrary. The supreme court noted that "there [was] no corroboration of a donative intent, only the self-serving testimony of the donee that [the decedent] wanted her to have the money. '[T]estimony as to the oral declarations . . . of a dead man are of . . . little weight[.]'" *Id*. at 399 (quoting *Succession of Zacharie*, 119 La. 150, 43 So. 988, 990 (1970) (first, second, and third alterations in original)).

Donative intent was also at issue in *Succession of Love*, 16-245 (La.App. 3 Cir. 9/28/16), 201 So.3d 1027. In that case, a panel of this court affirmed the trial court's finding that the decedent (James) transferred ownership of two bank accounts to his wife (Rebecca) through a valid donation inter vivos. Ultimately, donative intent was established based on the considerable evidence presented at trial, including the testimony of various witnesses regarding James's intent to transfer the bank accounts to Rebecca. James knew he was dying, and he wanted to financially take care of his wife without the necessity of legal proceedings. As this court explained:

> [James] donated all of the funds to her via the signature cards *and* he executed a power of attorney in authentic form to facilitate that transfer. He was ill and dying and had no intention of going to the bank or taking control of the funds. In making the accounts Rebecca's accounts as well, he gave up the exclusive rights to control the accounts, and in the power of attorney, he reinforced Rebecca's right to control the accounts.

*Id*. at 1038 (emphasis in original).

By comparison, there is no indication here that Decedent added George and Etta as joint account holders because she was attempting to dispose and otherwise divest herself of the account funds in anticipation of her immediate death. Indeed,

8

it is undisputed that George and Etta were added to the accounts in 2016, more than five years prior to Decedent's death.

Finally, in *Successions of Wayne*, 18-1177 (La.App. 1 Cir. 5/31/19) (unpublished opinion), the first circuit reversed the trial court's finding as to donative intent. The appellate court explained that the daughter did not provide strong and convincing proof that her deceased parents irrevocably divested themselves of a checking account because they continued to retain control over the account. And even though the daughter was added to her parents' joint checking account in 2001 via signature card, the first circuit noted that the signature card was insufficient to establish donative intent, particularly since the daughter testified that she was added for the purpose of assisting her parents in paying their bills; the checking account statements demonstrated that the decedents retained control of the account; and the daughter's testimony—without any corroborative evidence—that a verbal donation was made to her in June 2012 was insufficient to satisfy her heightened burden of proof.

Like *Successions of Wayne*, the Decedent here retained control and use of the bank accounts. She continued to deposit her own personal funds into the accounts, and she used the accounts to pay her bills and expenses until her death. In addition, Drusilla, the executrix, testified that George and Etta were added as joint account holders in the event Decedent become incapacitated. The mere fact that George and Etta were added as joint account holders only established that they had a right of withdrawal of funds from the accounts. *In re Succession of Elie*, 10-525, p. 4 (La.App. 3 Cir. 11/3/10), 50 So.3d 262, 265 ("The right of withdrawal, or having one's name listed on the account, is not tantamount to ownership.").

George, who was ninety-two years old at the time of trial, acknowledged that he was older than the decedent. He noted that all funds in Decedent's accounts from 2016 until her death in 2022 were solely her funds and that he never added his personal funds. George wrote checks from the joint accounts to cover Decedent's bills. He never paid taxes on the interest income attributable to those accounts. He admitted that Decedent's will did not name him as a beneficiary. Yet he believed that he would get the money from the joint accounts upon Decedent's death because he was listed as a joint account owner. George also explained that the decedent told him that "if anything happens to me—when I go, it goes to you."

Contrary to George's testimony, Drusilla testified that Decedent wanted her three nieces to be taken care of upon her death. Drusilla's testimony is supported by Decedent's will which bequeaths the accounts to her nieces. Drusilla testified that although Decedent added George and Etta to her accounts to help care for her during her final years, she did not intend for them to have her assets upon her death. Drusilla explained that she was Decedent's life-long friend. Drusilla emphasized that George and Etta became joint account holders to assist Decedent in paying her bills, including home health services, medication, and other necessities.

In the end, the signature card is insufficient to establish donative intent; the checking account statements overwhelmingly demonstrate that Decedent retained control of the accounts; George could not identify an amount of any of his deposits since he did not deposit money into the accounts; and George's testimony alone—without any corroborative evidence—that a verbal donation was made to him before Decedent's death is insufficient to satisfy his heightened burden of proof. As such, we hold that the Succession is the sole owner of the disputed funds.

**DECREE**

For the above reasons, the September 29, 2022 Judgment of the trial court is reversed, and it is ordered that the Succession of Carolyn Gauthier Bargeman is the sole owner of the account funds at issue in this appeal, which are being held on deposit in the registry of the district court below. The costs of this appeal are assessed to the defendants, George and Etta Bargeman.

**REVERSED AND RENDERED.**