FRED W. JONES, Jr., Judge.
A succession administrator sued to recover funds withdrawn by defendant (decedent’s daughter) from a savings account allegedly belonging to the decedent. From a judgment in favor of defendant, plaintiff appeals.
For the reasons hereinafter set forth, we reverse and remand.
According to the record, Helen Hodge died on September 18,1980. Alonzo Hodge was duly qualified as the administrator of his deceased wife’s succession. At the time of Mrs. Hodge’s death, there was a savings account in the First National Bank of Shreveport in the name of “Helen Hodge or Georgia Nance.” On the day after decedent’s demise, the defendant, Georgia Nance (the administrator’s stepdaughter) withdrew from that savings account the sum of $9,000.
The administrator sued to recover that sum and demanded an accounting from defendant for an additional $2,000 withdrawn from the same account during a three month period immediately prior to the death of Mrs. Hodge. Defendant answered, denying that the funds in the savings account belonged to Mrs. Hodge.
At the trial on the merits in April 1982, plaintiff introduced into evidence the following pertinent documents:
(1) P — 1, Savings Certificate # 04-02327, issued by The First National Bank of Shreveport, dated Sept. 30, 1976, in the names of Jesse Williams or Helen Hodge, for $11,000.
(2) P-2, bank money order on The First National Bank of Shreveport, dated May 9, 1980, payable to the order of Helen Hodge, for $13,334.86, and typed thereon “sav. cert. # 04-02327.”
(3) P-3, savings deposit slip issued by The First National Bank of Shreveport on June 24,1980, in the names of “Helen Hodge or Georgia Nance”, for $13,334.86.
(4) P-3A and P-4, signature cards executed by Helen Hodge and Georgia Nance in connection with the opening of the account described in (3) above.
(5) P-5, copy of “savings withdrawal” slip signed by Georgia Nance on September 19, 1980, acknowledging withdrawal of $9,000 from the described savings account.
Defendant testified it was her understanding that P — 1, the savings certificate, was owned solely by Jesse Williams (decedent’s uncle) and that it was converted into P-2, the bank money order (for the sake of convenience) when Williams was placed in a nursing home — in order that Mrs. Hodge *365 could pay Williams’ expenses and those of his aged mother, Martha Williams. She stated that Williams died in June 1980.
Although insisting that the funds in the contested savings account actually belonged to Jesse Williams, defendant explained that she withdrew the $9,000 at her mother’s instructions, after her death, to pay funeral expenses and “to take care of Sister Bea [Martha Williams] for as long as she lived.” Defendant never claimed that she owned any of the funds in that savings account.
In written reasons for judgment the trial judge concluded that the funds in question were placed in the savings account for the convenience of Jesse Williams; that plaintiff did not prove a donation of those funds to Helen Hodge from Jesse Williams; that the funds in the savings account belonged to Jesse Williams at the time of his death; and that any action for the recovery of those monies from defendant would have to be brought by the heirs of Jesse Williams.
There is a legal presumption that a joint bank account in the names of two parties is owned one-half by each. Cooper v. Hibernia National Bank, 405 So.2d 540 (La.App. 4th Cir.1981). Consequently, in this case there was a presumption that the funds in the savings account in the names of “Helen Hodge or Georgia Nance” belonged one-half to the decedent and one-half to the defendant. However, defendant effectively rebutted this presumption with the uncontradicted evidence that the account in question originated with funds belonging solely to Jesse Williams.
Plaintiff concedes that Williams purchased the $11,000 savings certificate in 1976 and placed it in his name and that of Helen Hodge, but argues that Williams made a valid remunerative or onerous donation of that certificate or the funds represented thereby to Helen Hodge, thereby obviating the necessity of an authentic Act of Donation.
Under our law every donation inter vivos of immovable property or incorporeal things must be made by authentic act, under penalty of nullity. La.Civil Code Article 1536. La.Civil Code Article 1538 applies this rule to all movables, but La.Civil Code Article 1539 excepts from this requirement the manual gift of corporeal movables.
Bordelon v. Brown, 84 So.2d 867, 868 (La.App.2d Cir.1956) involved a dispute over a joint savings account in the name of plaintiff and defendant, with the latter claiming a gift of the account to her. We held:
“The evidence indicates that Bordelon actually delivered to Mrs. Brown the bank book and she retained it in her possession until the trial of this case. While it can be said to be true that the bank book was a corporeal thing and therefore, a transfer of the book constituted a manual donation in accordance with the provisions of Article 1539, the mere possession of the book by Mrs. Brown did not transfer the obligation which it represented. The obligation constituted an incorporeal thing which could only be validly transferred in accordance with the provisions of Article 1536.”
However, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half the value of the charges or the services. La.C.C. Art. 1526. The party alleging the invalidity of the transaction has the burden of proving that the value of the object given exceeds by one-half that of the charges imposed in the case of an onerous donation. Placid Oil Co. v. Frazier, 126 So.2d 800 (La.App. 2d Cir.1961).
Here we are dealing with a claimed donation inter vivos of an incorporeal thing (savings account) where there was no formal Act of Donation. Since there was no evidence that, by transferring the account, Williams was purporting to remunerate Mrs. Hodge for past services, plaintiff can recover only if the record establishes that there was an onerous donation or transfer of the funds.
According to the record, Martha Williams was the mother of Jesse Williams and the grandmother of Helen Hodge. In 1956 Mrs. Williams moved into the Hodge residence in Shreveport, where she resided with and was *366 taken care of by the Hodges until the death of Helen Hodge in 1980. Jesse Willimas retired from his employment in California in 1976 and also moved in with the Hodges and his mother. Williams lived there until entering a Shreveport nursing home in 1980, shortly before his death.
Reputed to be 106 years of age, Martha Williams was still living at the time of the trial and being cared for by Georgia Nance, her great-granddaughter.
Queried with reference to the ownership of the savings account from which she withdrew $9,000, defendant Georgia Nance replied in answer to written interrogatories (received in evidence):
“These funds were owed (sic) by Jesse Williams. He left them with my mother to pay for his funeral and debts. The rest was to be used by my mother to care for Jesse Williams’ mother who was my mother’s grandmother. My mother left it in my care to care for Martha Williams, who was Jesse Williams’ mother and my great grandmother.”
Defendant repeated this explanation of the nature of the bank account at the trial. She added that when the account was opened Helen Hodge instructed her, in the event of Mrs. Hodge’s death, to use the funds for the latter’s burial expenses and to take care of Martha Williams for as long as she lived.
Regardless of defendant’s analysis of the legal effect of the transactions between Jesse Williams and Helen Hodge, the facts are undisputed — Jesse Williams transferred the funds to Helen Hodge with the charge imposed that Mrs. Hodge use them primarily to take care of Williams’ aged mother. By her own testimony defendant acknowledged that Helen Hodge considered the account to belong to her — otherwise, how could she direct that her funeral expenses be paid therefrom?
For these reasons, we conclude that Jesse Williams made a valid onerous donation to Helen Hodge of the savings account listed in their names. Since this was an onerous transfer, no formal or authentic Act of Donation was required. Consequently, the joint savings account in the names of “Helen Hodge or Georgia Nance”, ownership of which was disclaimed by defendant and from which she withdrew $9,000, was owned by the decedent at the time of her death.
As to the $2,000 withdrawn from the savings account prior to the death of Helen Hodge, the record reveals that the defendant has adequately accounted for the expenditure of those funds on behalf of the decedent, and no further accounting is required.
Defendant testified that she had spent a substantial portion of the $9,000 withdrawn from her mother’s savings account for the benefit of the decedent’s estate and, specifically, to carry out Mrs. Hodge’s obligation under the onerous donation to care for Martha Williams.[1] Under the circumstances, we deem that the interests of justice would be served by remanding this matter to the trial court for a hearing at which the parties would, be afforded an opportunity to present evidence on this question of credits to which defendant might be entitled for funds so expended. After making any appropriate deductions, the trial judge should then render judgment in favor of plaintiff and against defendant for the difference between those deductions and the $9,000 withdrawn by defendant from decedent’s bank account on the day after her death.
For the reasons set forth, and with these instructions, we reverse the judgment of the district court and remand the case for further proceedings consistent with this opinion, with cost of this appeal assessed to appellee.

. It appears that under La.C.C. Arts. 1997 and 1999, decedent’s obligation imposed by the onerous donation is heritable. See Castleman v. Smith, 148 La. 233, 86 So. 778 (1920); Franklin & Son, Inc. v. Richland Parish School Board, 240 So.2d 750 (La.App. 2d Cir.1970); Succession of Forestier, 11 So.2d 253 (Orl.La.App.1943). Therefore, any performance of that obligation by defendant would have benefited the decedent’s succession and heirs.