BOWES, Judge.
Appellant, Drionne M. Carter (hereinafter Drionne), now a major, appeals a judgment in favor of her father, A. Adrian Carter (hereinafter Carter), dismissing her claim against him for money set aside for her when she was a minor. We affirm.
Plaintiff is the daughter of Carter and Margaret McNab Carter. Mr. and Mrs. Carter were judicially separated on September 12, 1974, at which time Drionne was seven years old and her brother, Adrian, II, was eight years old. At the time of the separation, an agreement between the parties contained the following clause:
The said A. Adrian Carter agrees that Mrs. Margaret McNab Carter shall have the legal custody of the said minor children, and the joint custody of their savings accounts designated as follows, to-wit:
Special Savings Certificate No. 13297 in First Homestead and Savings Association, in the face amount of $5,700.00, standing in the name of Adrian Carter, II Special Savings Certificate No. 13296 in First Homestead and Savings Association, in the face amount of $5,700.00, standing in the name of Dori K. Carter or Mr. or Mrs. A. Adrian Carter. Special Savings Certificate No. 13298 in First Homestead and Savings Association, in the face amount of $5,700.00, standing in the name of Droinne [sic] Carter.
On August 4, 1986, Adrian, II, filed suit against Carter for delivery of the funds in the First Homestead Account, which Adrian asserted belonged to him (including accrued interest) and of which his father was alleged to have taken possession and failed to deliver. On August 29, 1986, Drionne filed a virtually identical suit against Carter. Carter reconvened, alleging various loans to both Adrian, II, and Drionne and claiming that they owed him $19,166.58 and $15,871.47, respectively. The cases were consolidated for trial. After trial on the merits, the trial court dismissed the claims of both plaintiffs, as well as both reconven-tional demands. Only Drionne has appealed.
On appeal, Drionne urges that the district court erred in ruling that defendant was entitled to use the money belonging to plaintiff in whatever manner he saw fit, urging that Carter had neither usufruct *1122 nor authority to administer the estate of his daughter after the divorce. The flaw in Drionne’s reasoning on appeal is her initial error — i.e., assuming that the funds in question belonged to her.
At trial, the only testimony on the origin of the funds came from Carter, Adrian and Drionne. The former Mrs. Carter, mother of Drionne, did not testify. Carter testified repeatedly that he had, on several occasions, deposited money in the three accounts for the children.
“My intent was to accumulate the money, keep it in my name so when they would go to college I would have a cushion to send them to college.”
Carter stated that he was the owner of the money and that he placed the accounts in the names of the children and in his name “for tax purposes, for one thing, to have money for their benefit when they got older and in the event of my death they would be the beneficiary of the account.”
No one else other than Carter either deposited or withdrew money from the accounts. Carter started the account when the children were about one year old with money he had “accumulated”. Carter had at all times possession of the passbooks. Shortly after the divorce, he withdrew the money from the accounts. Carter gave Dori Carter (actually his stepdaughter) the funds from the account in her name. The funds from the accounts for Adrian and Drionne were placed initially into a safety deposit box and later Carter established separate accounts at South Lafourche Bank and Trust Company for Adrian and Drionne. No further deposits were made. The Lafourche account, for Drionne, was entitled “Drionne Carter or Adrian or Ena Carter” (Ena Carter was the second Mrs. Carter).-
Adrian simply testified that he put no money into the account, and that he was unaware of the existence of the account until, at age 18, he was given an interest statement on the account by Carter and told to declare the interest as income in 1984.
Drionne similarly was given such an interest statement in 1984, at which time she, too, was surprised to learn about the existence of any such account. She stated that she had asked her father about the account, but did not receive a definite answer. She had never made any deposits in the account and had never signed a signature card authorizing withdrawals, etc.
There was absolutely no evidence whatsoever, other than the testimony of Carter, about the origin of the money in the accounts. Carter stated that he had placed his money into the accounts specifically for the purpose of their future education and other needs they might have in the future.
In Basco v. Central Bank and Trust Company, 231 So.2d 425 (La.App. 8 Cir.1970), the court considered ownership of funds in a similar situation:
We agree with the trial judge that the funds in the above-mentioned savings account were owned by the decedent, Louis Basco. He opened the account, he made the only deposit which was ever made to it, and he was the only person who was authorized to make withdrawals from it. The evidence shows that plaintiff did not make any deposits to the account, he was never authorized to make any withdrawals from it and there is nothing in the record which indicates that he had any proprietary interest in it, even though Louis Basco opened the account in plaintiffs name.
We also conclude that Louis Basco did not make a valid donation of the funds in that account to plaintiff. A donation inter vivos of an incorporeal thing, such as a credit, right or action, is not valid unless it is made by an act passed before a notary public and two witnesses. LSA-C.C. Art. 1536. Generally, an account on deposit in a bank is an incorporeal right, and a valid donation of such an account requires compliance with the provisions of Article 1536 of the Civil Code.
Basco, supra [citations omitted]
The court concluded:
The savings account was owned by the decedent, Louis Basco, and since there had been no compliance with the requirements of Article 1536 of the Civil Code, *1123 plaintiff never acquired the account, or the funds in it, by donation inter vivos. Basco, supra
The Supreme Court cited Basco with approval in Broussard v. Broussard, 340 So.2d 1309 (La.1976). There, the court had to characterize funds which had been separate property of the husband, and which were used to buy a certificate of deposit in the names of both husband and wife after the marriage, and later used to purchase savings certificates in both names. Mrs. Broussard argued the purchase of the certificates was a donation to her. The court disagreed.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. La.C.C. art. 1468. Louisiana Civil Code Articles 1536, 1538 and 1539 regulate the donation of incorporeals and movable property:
“Art. 1536. An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.”
“Art. 1538. A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as is before prescribed.
“Such an act ought to contain a detailed estimate of the effects given.”
“Art. 1539. The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality.”
There was no actual delivery of the cash to Mrs. Broussard. The purchases of certificates in the names of both spouses, without an actual withdrawal and delivery of funds to Mrs. Broussard, did not effect a manual gift or a donation to her. Rather, the purchases were analogous to a deposit in a joint savings account, which in and of itself, will not transfer ownership of the funds. Succession of Dykes, 258 So.2d 606 (La.App. 1st Cir.1972); Dawson v. Capital Bank & Trust Co. of Baton Rouge, 261 So.2d 727 (La.App. 1st Cir.1972). See also, Basco v. Central Bank & Trust Co., 231 So.2d 425 (La.App. 3d Cir.1970); Owens v. Owens, 259 So.2d 454 (La.App. 3d Cir. 1972). Furthermore, an account on deposit is an incorporeal right, La.C.C. arts. 460, 474, which may only be donated by a notarial act in compliance with Article 1536. Vercher v. Roy, 171 La. 524, 131 So. 658 (1930); Northcott v. Livingood, 10 So.2d 401 (La.App. 2d Cir.1942); Basco v. Central Bank & Trust Co., supra; Owens v. Owens, supra.
Therefore, in Broussard, the court thus found that no donation had taken place. We find Broussard controlling in the present case, there being no notarial act as required in LSA-C.C. art. 1536 to effect a donation inter vivos of the account which was incorporeal property. Absent any evidence that the funds in Drionne’s account were hers, or owned by her in her own capacity, or were properly donated by Carter in accordance with LSA-C.C. art. 1536, we are compelled to conclude that the funds belonged to and were always owned by Carter. Carter emphatically denied any intent to donate the funds themselves.[1] Even though Carter cashed out the original accounts and kept the cash in a safety deposit box before opening the Lafourche accounts, no delivery of the funds to Drionne ever took place and thus there was no manual gift under LSA-C.C. article 1539. Broussard, supra. See also Succession of Amos, 422 So.2d 605 (La.App. 3 Cir.1982).
Therefore, we find no error in the judgment of the trial court dismissing Drionne’s suit. Because of our finding that the funds never belonged to Drionne, we find it unnecessary to address the other issues raised on appeal.
In fairness to both parties, we agree with the holding of the learned trial judge that *1124 Carter did utilize the monies in the account (and more) for Drionne, purchasing for her an automobile costing over $11,000 and paying for various other needs of hers, such as furniture, insurance, rent and miscellaneous other expenditures. Unfortunate as the family situation appears to be, we do not find that Carter misappropriated any money belonging to his children, or used the money he had saved for them in any way other than he had originally intended.
Carter does not appeal the dismissal of his reconventional demand. Accordingly, the judgment appealed from is affirmed. All costs of this appeal are assessed to appellant.
AFFIRMED.

. The fact that the accounts were, in part, placed in the names of the children as an income tax "loophole" is insufficient to signify donative intent under the remaining circumstances of this case. Such "accounting” methods as Carter employed here may or may not constitute a problem with the Internal Revenue Department, but this issue does not concern us.