STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1115

JODI SYLVESTER

VERSUS

JO NELL FONTENOT

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. 68545-A
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED.

C. Brent Coreil
Post Office Drawer 450
Ville Platte, LA   70586
(337) 363-5596
COUNSEL FOR DEFENDANT/APPELLEE:
    Jo Nell Fontenot

J. Wendel Fusilier
Jacob B. Fusilier
Post Office Box 528
Ville Platte, LA   70586
(337) 363-6661
COUNSEL FOR PLAINTIFF/APPELLANT:
    Jodi Sylvester

AMY, Judge.

The plaintiff filed suit seeking the return or division of funds deposited in an investment account and seeking to probate a copy of a purported will naming her as the sole legatee. The defendant alleged that the will was invalid in form and that the funds in the account were at least partially hers. The trial court rendered judgment, finding that the will was invalid in form, denying the attempted probate, and ordering that the funds in the account be divided equally between the parties. The plaintiff appeals. For the following reasons, we affirm the judgment of the trial court.

## Factual and Procedural Background

The parties in this case are Jodi Sylvester, the plaintiff, and her mother, Jo Nell Fontenot, the defendant.[1] This suit arises out of a dispute between the parties regarding the ownership of funds in an investment account and over the disposition of the estate of the decedent, Rena Guillory Fontenot Ardoin. The decedent is the defendant's mother and the plaintiff's grandmother. The plaintiff is seeking the return or division of funds in an Edward Jones investment account that she claims were given by the decedent to the defendant as a donation to her. The plaintiff contends that, because she was still a minor at the time of the donation, the defendant accepted the funds on her behalf. The defendant alleges that at least part of the funds in the account are her separate funds or, in the alternative, that it is a joint account and should be divided between the parties.

The plaintiff also seeks to probate a copy of the decedent's purported will, which leaves the decedent's property to the plaintiff. The defendant argues that the will is invalid in form because it is not signed on every page and therefore should not be probated. She also argues that, even if the will is valid in form, because the

---

[1] The defendant's given name is spelled "Jonell," "JoNell" and "Jo Nell" in the record. We adopt the spelling from the defendant's appellate brief.

original cannot be located, there is a presumption that the decedent intended to revoke the will and the plaintiff has failed to overcome that presumption.

A trial was held and evidence adduced on May 12, 2010. The plaintiff submitted into evidence a copy of the Last Will and Testament of Rena Guillory [Fontenot] Ardoin, dated September 20, 1991, which designated the plaintiff as universal legatee and designated the defendant as the universal legatee in the case of a lapse of the legacy to the plaintiff. The testimony of witnesses reflected that the copy of the will submitted into evidence contained obvious insufficiencies. Notably, the majority of the copied pages did not include the decedent's signature.

Glenn Marcantel, an attorney, testified that in 1991, he prepared a notarial testament for the decedent. Mr. Marcantel and two other witnesses, Shawana Fontenot and Wendy Lafleur, identified their signatures as witnesses to the will and testified that they did not specifically remember the decedent/testatrix signing the testament. However, they explained that it was the procedure in their office to have testators sign every page.

The plaintiff testified that, after the decedent passed away, she searched the decedent's "personal files," which contained bank statements, copies of two *inter vivos* Acts of Donation to the plaintiff, and the title to the decedent's mausoleum. According to the plaintiff, she located two copies of the will, but she did not locate the original nor did she know what happened to it.

The plaintiff admitted that, if the will were not upheld, she would not receive anything from the decedent's estate. She also admitted that there was animosity between her and her mother, the defendant. The plaintiff made several allegations of misconduct on the part of the defendant, in particular that the decedent had obtained

2

several Certificates of Deposit intended for the plaintiff, and that the defendant had cashed some of them without the plaintiff's knowledge and converted the funds.

The defendant testified as to her awareness of her mother's will and that, at some point, she had seen the original will in the filing cabinet at the decedent's residence. According to the defendant's testimony, the decedent became worried about the plaintiff having any control over the decedent's property, due to the plaintiff's alleged changes in behavior. The defendant testified that, at the decedent's request, she consulted an attorney about two acts of donation to the plaintiff that were causing the decedent's concern and was advised that they were invalid because they attempted to transfer property to a minor and that there was no valid acceptance by the minor's guardian.[2]

Several witnesses testified about whether the decedent revoked her will. The plaintiff testified that the decedent never told her that she was going to revoke her will and, in her opinion, the decedent would be "destroyed" if she knew that the plaintiff and her children were not being taken care of. However, according to the defendant, the decedent told her that she was not worried about the will because the will "wasn't any good." The defendant claimed that the decedent thought the will was invalid because she was under the impression that she had to make a bequest to the defendant.[3]

---

[2] The trial court held that the acts of donation were invalid and the issue was not contested on appeal.

[3] The record contains the following colloquy between the defendant and her attorney:

Q. Why did [the decedent] tell you that? What did she tell you was wrong with the Will?

A. At the time she made the papers with, she would have to at least leave me one dollar, and she didn't do it so she knew that the Will wasn't any good. She said she didn't have to worry about it.

Theresa Tanya Thompson Guillory, the decedent's niece and goddaughter, testified that, at one time, she had a copy of the will. According to her testimony, although the decedent did not approve of the plaintiff's lifestyle, the decedent loved the plaintiff "very much" and wanted to make sure that the plaintiff was "taken care of."

Angela Fusilier, the decedent's niece and the plaintiff's godmother, testified that the decedent kept her will in a filing cabinet with her other important papers. According to Ms. Fusilier, the decedent was "concerned" about the plaintiff but that she wanted to make sure that both the plaintiff and the defendant were provided for.

The decedent's sister, Nazel Guillory, testified that the decedent "loved [the plaintiff] very much," and that the decedent intended for the plaintiff to inherit all of her property. Ms. Guillory also testified that she believed the decedent would have told her if she was going to disinherit the plaintiff and that the decedent never told her that she had revoked the will.

There was also testimony from several witnesses about the disputed investment account. The plaintiff testified that she did not learn that there was an Edward Jones account in her name until her first year of college. The plaintiff alleged that the funds in the account came from Certificates of Deposit that the decedent obtained on the plaintiff's behalf. The plaintiff submitted into evidence copies of three Certificates of Deposit from Guaranty Bank, all of which had been redeemed in 2001. The plaintiff further asserted that she had never received any of the monies from either the Edward Jones account or any of the Certificates of Deposit.

John Mayeux, an advisor at Edward Jones, testified that, in 2001, the defendant transferred funds from a Certificate of Deposit to an investment account. Mr.

Mayeux believed that the Certificate of Deposit originated from Citizens Bank. He testified that the account was in both the plaintiff's and the defendant's names. The plaintiff did not introduce any physical evidence regarding the initial deposit into the Edward Jones account other than a statement, reflecting that the account contained two certificates of deposit, investments in a mutual fund, and a money market account. According to Mr. Mayeux's testimony, the defendant told him that the money came from her mother (the decedent) and that it was intended for the plaintiff. No testimony was elicited with regard to whether there were subsequent deposits to or withdrawals from the account.

The defendant testified that, in 2001, she redeemed a Certificate of Deposit from Citizens Bank and that she gave those funds to the plaintiff to pay off some of her debts. She testified that the funds in the Edward Jones account came partially from money the decedent had intended for the plaintiff's college tuition and partially from the defendant's own money. She claimed that she had put the account in both of their names in case of an emergency. The defendant did not testify as to what percentage of the account was allegedly her portion, nor the source of the alleged separate funds that she deposited into the account.

The trial court found that the will was invalid in form and denied the attempt to probate the will. The trial court further found that the funds in the Edward Jones account were a joint deposit intended as a "donation to both of the named parties[,]" and ordered that the funds be divided equally between the parties.

The plaintiff appeals, presenting the following assignments of error:

> 1. The Trial Court committed manifest error when it failed to probate the will presented to it.

5

2. The Trial Court committed manifest error when it held that the funds in the Edward Jones account were a "joint donation."

3. The Trial Court committed manifest error when it failed to apply proper Louisiana law and divided the funds in the Edward Jones account between the parties equally.

4. The Trial Court committed manifest error when it failed to address ownership of the Certificates of Deposit.

**Discussion**

*Standard of Review*

An appellate court may not set aside a trial court's findings of fact in absence of manifest error or unless it is clearly wrong. *Rosell v. ESCO*, 549 So.2d 840 (La.1989). "To reverse a factfinder's determination under this standard of review, an appellate court must undertake a two-part inquiry: (1) the court must find from the record that a reasonable factual basis does not exist for the finding of the trier of fact; and (2) the court must further determine the record establishes the finding is clearly wrong." *S.J. v. Lafayette Parish School Bd.*, 09-2195, p. 12 (La. 7/6/10), 41 So.3d 1119, 1127. If a trial court's findings are reasonable based on the entire record and evidence, an appellate court may not reverse those findings even if it is convinced that it would have weighed the evidence differently. *Id.* "The basis for this principle of review is grounded not only upon the better capacity of the trial court to evaluate live witnesses, but also upon the proper allocation of trial and appellate functions between respective courts." *Edwards v. Daugherty*, 98-635, p. 4 (La.App. 3 Cir. 6/9/99), 736 So.2d 345, 348, *writ denied*, 99-2034 (La. 9/17/99), 747 So.2d 568.

*Validity of the Will*

The plaintiff asserts, in her first assignment of error, that the trial court committed manifest error when it failed to probate the will presented to it. The

6

Louisiana Civil Code provides for two forms of testaments: olographic and notarial. La.Civ.Code art. 1574. A notarial testament:

> shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this ____ day of _____, ____."

La.Civ.Code art. 1577. According to La.Civ.Code art. 1573, "[t]he formalities prescribed for the execution of a testament must be observed or the testament is absolutely null." In order to rebut the presumption in favor of the validity of testaments in general, there must be exceptionally compelling evidence of the proof of the nonobservance of formalities. *Succession of Daigle*, 601 So.2d 10 (La.App. 3 Cir. 1992). Further, the factual findings of the trial court in will contest cases are accorded great weight and should not be disturbed absent a finding of manifest error. *Id.*

In addition to the explicit requirements of La.Civ.Code art. 1577(1), Louisiana courts have held that the failure to sign the separate pages of the will renders the will an absolute nullity. *See, e.g., In re Hendricks*, 08-1914 (La.App. 1 Cir. 9/29/09), 28 So.3d 1057. There is a limited exception where the testator "substantially complied" with the statutory requirements, but failed to sign a page which did not contain

7

dispositive provisions. *Succession of Guezuraga*, 512 So.2d 366 (La.1987); *In re Succession of Simonson*, 07-742 (La.App. 5 Cir. 3/11/08), 982 So.2d 143.

However, in this case, the trial court's written reasons reveal notable deviations from the codal requirements. The trial court stated:

> In Exhibit 4, the copy of the will executed by the decedent/testatrix[,] the signature lines on each page are not reflective of the signature which is alleged to have been made thereon. If the original will had been available for presentation and petition for probate, the signature of the testatrix would have to be apparent on each page of the testament along with the signature following the attestation clause. In the copy, which is submitted for probate[,] the signature of the testatrix on each and every page, is not apparent. Therefore, this Court cannot allow a copy of a testament to be probated under a lesser standard that is required of an original.

In light of these findings, it is apparent that the facts in this case are distinguishable from those in *Guezuraga*, 512 So.2d 366. In that case, the testatrix signed all of the pages containing dispositive portions and the beginning of the attestation clause but not the page containing the end of the attestation clause. The supreme court held that because the testatrix had signed on all of the pages containing dispositive provisions and the page containing the beginning of the attestation clause, the will was valid.

Similarly, in *Simonson*, 982 So.2d 143, the testator failed to sign one page of a seven-page testament. The trial court found that the will was invalid in form and therefore null. On appeal, the fifth circuit reversed, holding that, because there were no allegations of fraud and because there were no "dispositive, appointive, or directive provision[s]" on the unsigned page, only the unsigned page was invalid and that the will should have been probated with the exclusion of the unsigned page. *Id.* at 146.

A review of the record, including the testimony of witnesses, indicates that only a copy of the will, not the original, was submitted into evidence. Reference to

8

that supports the trial court's observation that in "the copy of the will executed by the decedent/testatrix[,] the signature lines on each page are not reflective of the signature which is alleged to have been made thereon." Further, the dispositive provisions are contained on page two of the will, which is unsigned. Therefore, in light of the failure of the copy of the will to comply with the statutory requirements, the trial court was not manifestly erroneous in finding the will to be invalid and refusing to probate the copy of the will.

This assignment is without merit.

*Division of the Edward Jones Account*

The plaintiff's second and third assignments of error assert that the trial court erroneously held that the funds in the Edward Jones account were a joint deposit or joint donation, and that the trial court erroneously divided the funds equally between the parties. The trial court gave no reasons for its determination that the funds in the Edward Jones account were a "joint deposit" intended as a "donation to both" the plaintiff and the defendant.

Louisiana Civil Code Article 797 provides that "[o]wnership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal." *See also Hill v. Hill*, 08-197 (La.App. 5 Cir. 5/27/08), 984 So.2d 229, *writ denied*, 08-1714 (La. 10/24/08) 992 So.2d 1025. In *Sanders v. Sanders*, 62 So.2d 284 (La.1952), the defendant appealed the trial court's judgment finding that the balance of a joint bank account belonged solely to a deceased joint account holder. The supreme court, quoting 7 Am. Jur. *Banks* § 42, stated:

Bank accounts may be established in the name of two or more persons. One of the important questions which arises in such cases is as

9

> to the ownership of the funds. It is obvious that the depositors may own
> the funds in common.

*Sanders*, 62 So.2d at 289. As can be ascertained from the final sentence of Article 797, there is a presumption that a joint bank account is owned in equal shares by each depositor. *See also Cooper v. Hibernia Nat'l Bank*, 405 So.2d 540 (La.App. 4 Cir. 1981). That presumption can be rebutted by appropriate evidence. *Succession of Hodge*, 424 So.2d 363 (La.App. 2 Cir. 1982). However, the deposit of funds into a joint account does not by itself effect a transfer of the ownership of those funds. *Succession of Fralick v. Sec'y of Dept. of Revenue*, 529 So.2d 159 (La.App. 3 Cir. 1988).

In *Sanders*, 62 So.2d 284, the only evidence offered was that a joint bank account existed, that it contained certain funds, and that the purpose of the funds was for the payment of household expenses of one of the joint account holders. The supreme court noted that, from a review of the record, they were unable to determine "who made the deposits to the account, when they were made, from what sources the funds so deposited came, or who made the withdrawals, and therefore we cannot determine the respective interests in the bank account." *Id.* at 289. The supreme court then remanded the case so that ownership of the account could be determined.

In *Carter v. Carter*, 538 So.2d 1121(La.App. 5 Cir. 1989), the fifth circuit addressed the ownership of funds that a father had placed in a bank account in his name and in his minor daughter's name. The father testified at trial that the money belonged to him, that he was the only person who ever deposited or withdrew money from the account, and that he put the account in his daughter's name for tax purposes. He further testified that the funds in this account and in others bearing his other children's names were intended to pay for his children's education and any other

10

future needs. The fifth circuit found that the daughter had put on no evidence that the funds in the account were hers or that the father had properly donated the funds to her. Therefore, the fifth circuit stated that it was "compelled to conclude that the funds belonged to and were always owned by [the father]." *Id.* at 1123.

In this case, the testimony reflected that the account was in both the plaintiff's and the defendant's names. Further, the testimony was that the funds in the bank account came from either the decedent's gifts to the plaintiff and/or from funds that the defendant put in the bank account. Although the plaintiff asserted that the entirety of the funds came from a Certificate of Deposit that was a donation to her from the decedent, she offered no evidence that the defendant did not deposit separate funds into the account or that, if there were separate funds in the account, the defendant donated those funds to her.

This case is distinguishable from *Sanders*, 62 So.2d 284, because, in this case, there was evidence presented regarding who made deposits to the account, when they were made, and, to some extent, the source of the funds. Further, here, as in *Carter*, 538 So.2d 1121, the defendant testified that the money in the account was partially hers and that the account was intended to be used for the plaintiff's college education. However, the defendant did not present any evidence with regard to the amount of her separate funds that were contained within the account.

Given the evidence presented in this case, the trial court could have determined that the defendant's testimony was more credible than the plaintiff's with regard to the funds in the Edward Jones account. "When the findings are based on determinations regarding the credibility of witnesses, the manifest error-clearly wrong standard demands great deference to the findings of fact, for only the factfinder is

11

cognizant of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Hebert v. Rapides Parish Police Jury*, 06-2001, p. 3 (La.1/16/08), 974 So.2d 635, 654 (on rehearing). Therefore, we do not find that the plaintiff overcame the presumption that the funds in a joint bank account belong to both of the named account holders. Nor does the record indicate that the trial court was manifestly erroneous in determining that the funds in the account were jointly owned. According to La.Civ.Code art. 797, in the absence of contrary law or juridical act, the funds belong in equal shares to the owners in indivision. The plaintiff argued that the funds in the account belonged solely to her. The defendant testified that part of the funds in the account were her separate funds, but she offered no evidence with regard to the percentage of the account that was her separate property. Once the trial court determined that the funds in the joint account belonged to both the plaintiff and the defendant, we cannot say that the trial court committed manifest error in dividing the shares equally. Thus, we find no error in the trial court's division of the shares equally.

These assignments of error are without merit.

*Ownership of the Certificates of Deposit*

The plaintiff's fourth assignment of error argues that the trial court failed to rule on the ownership of the Certificates of Deposit, copies of which were submitted into evidence.

Louisiana Code of Civil Procedure Article 862 states:

Except as provided in Article 1703, a final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings and the latter contain no prayer for general and equitable relief.

The statute is intended to allow courts to render substantive justice on the basis of facts pleaded and to refuse to permit a denial of substantive rights due to technical defects of language or characterization of the case. *Melancon Equip., Inc. v. Nat'l Rental Co., Ltd.*, 07-1008 (La.App. 3 Cir. 2/27/08), 978 So.2d 1053. As long as facts constituting the claim are alleged, a party is entitled to any relief to which he is entitled under the pleadings and the evidence. *Id.* However, La.Civ.Code art. 862 is not "intended to confer jurisdiction on a court to decide a controversy which the parties have not regularly brought before it. Otherwise, a judgment beyond the pleadings is a nullity." *Domingue v. Bodin*, 08-62, p. 3 (La.App. 3 Cir. 11/5/08), 996 So.2d 654, 657 (citations omitted). Further, due process requires adequate notice to the parties of the matters that will be adjudicated. *Glover v. Med. Ctr. of Baton Rouge*, 97-1710 (La.App. 1 Cir. 6/29/98), 713 So.2d 1261.

In this case, a review of the record, including the pleadings, testimony and evidence presented at trial, and the pre- and post-trial briefs of the parties, contains only tangential references to three Certificates of Deposit. The majority of the references to the Certificates of Deposit are with regard to the origin of the funds deposited in the Edward Jones account.

Mr. Mayeux testified that the funds in that account came from a Certificate of Deposit.[4] According to the plaintiff, the decedent would occasionally purchase Certificates of Deposit for the plaintiff and put them in the plaintiff's and the defendant's names. She testified that when one of the Certificates of Deposit would mature, it would be redeemed and put into another Certificate of Deposit. Additionally, she testified that one of the Certificates of Deposit eventually became

---

[4] There was conflicting testimony about whether the Certificate of Deposit that established the Edward Jones account came from Citizens Bank or Guaranty Bank.

the investment account. The defendant testified that she redeemed one Certificate of Deposit, in the amount of fifty thousand dollars, and gave the proceeds to the plaintiff. The defendant further testified that the money in the investment account came from Guaranty Bank.

Neither party, either at trial or in its pre- or post- trial briefs, argued that there should be a determination of the ownership of the Certificates of Deposit. In her appellate brief, the defendant professes "total confus[ion]" regarding the Certificates of Deposit and alleges that the Certificates of Deposit submitted into evidence "were not an issue in this litigation." Our review of the record indicates that the ownership of the Certificates of Deposit was not an issue presented to the court, outside of the argument that the funds may have been placed into the Edward Jones account. Therefore, we find no error in the trial court's omission of the specific issue of ownership of any of the Certificates of Deposit from its ruling. Furthermore, we note that even though the plaintiff seeks a determination as to ownership of these Certificates, the photocopies of those certificates indicate that they are dated July 1, 2000 through May 30, 2001. No testimony was presented as to the present state of the Certificates, if any.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the trial court's judgment is affirmed. All costs of these proceedings are assessed to the appellant, Jodi Sylvester.

**AFFIRMED.**