# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

### 19-104


**SUCCESSION OF MICHELLE BETH ROY BOOTH AND
ROBERT MARK BOOTH, SR.**


**\*\*\*\*\*\*\*\*\*\***


ON SUPERVISORY WRITS FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 58376
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

### PHYLLIS M. KEATY
### JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Phyllis M. Keaty, and Candyce G. Perret, Judges.


**JUDGMENT REVERSED. CASE REMANDED.**

**Carla S. Sigler**
**Bryant & Sigler, LLC**
**1827 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 602-6999**
**Counsel for Relator:**
**Michael Christopher Booth**

**Brad Guillory**
**Erin F. Hargrave**
**Law Office of Brad Guillory**
**940 Ryan Street**
**Lake Charles, Louisiana 70601**
**(337) 433-5297**
**Counsel for Respondent:**
**Rebecca Michelle Booth**

**KEATY, Judge.**

The Relator seeks supervisory writs from a trial court judgment which granted relief sought by the Respondent in her Petition to File and Execute Testaments, for Removal of Administrator, and for Appointment of Independent Executrix. For the following reasons, we reverse the trial court judgment and remand this matter to the trial court for further proceedings.

## STATEMENT OF THE CASE

The instant case arises from the succession proceedings of husband and wife, Michelle Roy Booth and Robert Mark Booth, Sr. Mrs. Booth died on March 1, 2015, and Mr. Booth died on June 4, 2018. The Booths left behind three children born of their marriage: Michael Christopher Booth, Sr., the relator herein; Rebecca Michelle Booth, the respondent herein; and Robert Mark Booth, Jr.

Michael filed a Petition for Appointment of Administrator (Michael's Petition) on September 14, 2018, wherein he asserted, in part:

> Petitioner files herewith an Affidavit of Death, Domicile, and Heirship. No valid last wills and testaments exist for either MICHELLE BETH ROY BOOTH or ROBERT MARK BOOTH, SR. Only copies of their purported last wills and testaments were located, as they have been marked "copy" on the top right-hand side of the first page, and they would be considered absolutely null under LSA-C.C.Art. 1573. They featured no signatures on each and every page, as is required for a notarial testament under LSA-C.C.Art. 1577.

Michael was subsequently appointed as administrator.

On October 11, 2018, Rebecca filed a Petition to File and Execute Testaments, For Removal of Administrator, and For Appointment of Independent Executrix (Rebecca's Petition), to which she attached the purported original wills of their parents. Michael filed an opposition to Rebecca's Petition, arguing that their parents' wills were "facially and fatally invalid, defective testaments." Following a hearing, the trial court signed a judgment on January 15, 2019, granting Rebecca's

Petition, declaring that the decedents' wills were "valid and shall be executed according to law," removing Michael as administrator of their parents' successions, and appointing Rebecca as the independent executrix of their parents' succession.

Michael timely sought expedited supervisory review from this court. We ordered the matter stayed pending our review of the judgment.

### DISCUSSION

"The proper procedural vehicle to contest an interlocutory judgment that does not cause irreparable harm is an application for supervisory writs. *See* La. C.C.P. arts. 2087 and 2201." *Brown v. Sanders*, 06-1171, p. 2 (La.App. 1 Cir. 3/23/07), 960 So.2d 931, 933.

Pursuant to La.Civ.Code art. 1573, "[t]he formalities prescribed to the execution of a testament must be observed or the testament is absolutely null." The requirements for a notarial testament are found in La.Civ.Code art. 1577, which provides:

> The notarial testament shall be prepared in writing and dated and shall be executed in the following manner. If the testator knows how to sign his name and to read and is physically able to do both, then:
>
> (1) In the presence of a notary and two competent witnesses, the testator shall declare or signify to them that the instrument is his testament and shall sign his name at the end of the testament and on each other separate page.
>
> (2) In the presence of the testator and each other, the notary and the witnesses shall sign the following declaration, or one substantially similar: "In our presence the testator has declared or signified that this instrument is his testament and has signed it at the end and on each other separate page, and in the presence of the testator and each other we have hereunto subscribed our names this _____ day of _____, _____."

In *Sylvester v. Fontenot*, 10-1115, pp. 7-8 (La.App. 3 Cir. 3/9/11), 58 So.3d 675, 680, this court stated:

> In order to rebut the presumption in favor of the validity of testaments in general, there must be exceptionally compelling evidence of the

proof of the nonobservance of formalities. *Succession of Daigle*, 601 So.2d 10 (La.App. 3 Cir.1992). Further, the factual findings of the trial court in will contest cases are accorded great weight and should not be disturbed absent a finding of manifest error. *Id.*

In addition to the explicit requirements of La.Civ.Code art. 1577(1), Louisiana courts have held that the failure to sign the separate pages of the will renders the will an absolute nullity. *See, e.g., In re Hendricks*, 08-1914 (La.App. 1 Cir. 9/29/09), 28 So.3d 1057. There is a limited exception where the testator "substantially complied" with the statutory requirements, but failed to sign a page which did not contain dispositive provisions.

Copies of the virtually identical purported wills of Mr. and Mrs. Booth were

accepted into evidence. The first page of Mr. Booth's will[1] read:

LAST WILL AND TESTAMENT
Of Robert Mark Booth Senior


Before me, Sharon M. Booth #54272 , Clerk of the 14th Judicial District Court in and for the Parish of Calcasieu, being fully commissioned and qualified as such, and ex officio Notary Public, in the presence of 3 (three) competent witnesses residing in the Parish of Calcasieu, State of Louisiana, Robert Mark Booth Senior, a resident of Lake Charles, State of Louisiana, personally came before me, the Notary, and declared to me, the Notary, in the presence of the undersigned witnesses that he wished to make his Last Will and Testament in the presence of the 3 (three) witnesses; and I, the Notary, received it from said dictation and wrote it down exactly as it was dictated to me in the presence of the testator and the 3 (three) witnesses, in the following words, to wit:

I, Robert Mark Booth Senior, a resident of Lake Charles, parish of Calcasieu and state of Louisiana, declare that this is my last will and testament and I revoke all previous wills and codicils.

1. I am married to Michelle Beth Roy Booth.

2. Three (3) children were born of this marriage:

   Robert Mark Booth, Junior
   Born November 4, 1974

   Michael Christopher Booth
   Born May 12, 1976

   Rebecca Michelle Booth
   Born December 8, 1977


The second page of both of the Booths' wills contained dispositive provisions

in paragraphs numbered three through eight, followed by:

---

[1] The first page of Mrs. Booth's will lists her full name in place of Mr. Booth's name in the first three paragraphs. In the first numbered paragraph, her name appeared in place of her husband's name. In all other respects, the first page of the Booths' wills are identical.

I publish and sign this Last Will and Testament, consisting of two (2) typewritten pages, on January 15, 2008, and declare that I do so freely, for the purposes expressed, under no constraint or undue influence, and that I am of sound mind and of legal age.

Mr. and Mrs. Booth's signature appeared on the bottom of the second page of their respective will.

The third page of Mr. and Mrs. Booth's wills contained the following attestation clause:

On _____January 15_____, 20_08_, in the presence of all of us, the above-named testator signed and declared to us that this is his Last Will and Testament, and then at testator's request, and in his presence, and in each other's presence, we all signed below as witnesses, and we declare, under penalty of perjury, that, to the best of our knowledge, the testator signed this instrument freely, under no constraint or undue influence, and is of sound mind and legal age.

The signatures, printed names, and addresses of three witnesses are found below the attestation clause. Neither testator signed page three of their respective will.

The fourth page of Mr. and Mrs. Booth's wills contained the following paragraph:

This Last Will and Testament of Robert Mark Booth Senior was dictated by the testator to me, the Notary, in the presence and hearing of the 3 (three) witnesses and was reduced to writing by me, the Notary, as dictated. I, the Notary, then read the above Last Will and Testament to the testator in the presence of the 3 (three) witnesses, and the testator, being satisfied with said Last Will and Testament then signed it in my presence and in the presence of the 3 (three) witnesses, and this all having been done, received, dictated, read, and signed at one time, without any interruption, and without turning aside to do any other act, in the Parish of Calcasieu, State of Louisiana, on January 15 20 08.

Thereafter, each testator's signature and printed name appeared, as did the signature and printed name of Notary Public, Sharon M. Booth.

Michael contends that both decedents' wills are absolutely null because they lack signatures on each and every page. In fact, he notes that pages one and three of both of the four-page wills are not signed by the testators. Michael further submits that the attestation clauses in the wills are fatally deficient for many reasons. First, they do not contain the statement required by La.Civ.Code art. 1577(2), i.e., that the testament has been signed in the presence of the witnesses and the notary on each

4

and every page, nor does either attestation clause feature any language that is remotely, much less substantially, similar to that required by La.Civ.Code art. 1577(2). Secondly, Michael points out that there is no signature of the testator on the page containing the attestation clause.

In the face of such fatal defects, Michael argues that testamentary intent is never reached. In support of his argument, Michael relies on *Successions of Toney*, 16-1534, p. 10 (La. 5/3/17), 226 So.3d 397, 404, wherein a will was invalidated because the supreme court found that its deviations from the form required by La.Civ.Code art. 1577, which "unambiguously requires the testator to 'sign **his name** at the end of the testament **and on each other separate page**,'" were significant and material. In *Toney*, "the first two pages of the will [we]re not signed, but [we]re only initialed[,] . . . [and] the initials [we]re in print rather than cursive writing." *Id.*

The *Toney* court recognized that "[e]stablished appellate jurisprudence holds that an attestation clause is defective when the clause does not indicate the notary and witnesses signed in the presence of the testator and each other." *Toney*, 226 So.2d at 405. The supreme court noted that "[i]f the legislature had desired that [] generic notarization language suffice for purposes of the notarial will, it could have simply required notarial testaments to be formalized via authentic act." In response to the proponent of the will's argument that the will should be upheld because it "originated from a form found on the internet[,]" the *Toney* court further noted that "[w]hether it is prudent to further reduce testamentary form requirements so as to more liberally encompass those commonly found in other states is a question of policy reserved to the purview of the legislature." *Id.* at 407.

Michael also directs us to this court's recent decision in *Matter of Succession of Biscamp*, 16-673, pp. 10-11 (La.App. 3 Cir. 2/1/17), 211 So.3d 472, 480, *writ*

*denied sub nom.*, 17-408 (La. 4/27/18), 241 So.3d 305, where this court affirmed the trial court's nullification of a notarial testament where:

> [The] purported attestation clause, apart from acknowledging the testator and witnesses by name, makes no mention of the testament and, most importantly, contains no statement attesting to Biscamp's declaration or signification, made in the presence of both the notary and the witnesses, that the instrument was his testament.
>
> Rather than an attestation, the clause containing the standard legalese—"subscribed, sworn to and acknowledged"—is merely a "general notarization of the will," nearly identical, with the exception of the names of the testators and witnesses, to those contained in wills recently nullified by the first circuit in *Succession of Toney*, 195 So.3d at 675.

Lastly, Michael argues that the trial court erred in ordering the wills to be probated when there was fraud in their execution. Michael contends that the trial court incorrectly stated that fraud was not at issue. To the contrary, Michael submits that "Louisiana courts have held statutory and notarial wills invalid when they contain **material** deviations from form requirements, even in the absence of any indication of fraud." *Toney*, 226 So.3d at 407.[2] He further submits that the trial court erred in ignoring the notary's confession that she neither prepared the wills nor witnessed the preparation of the wills. Michael reiterates that although both wills state that the notary, Sharon M. Booth, "received it from said dictation and wrote it down exactly as it was dictated to me in the presence of the testator and the 3 (three) witnesses, in the following words, to wit," she testified that the decedent, Michelle Roy Booth, drafted both wills. Further, on cross examination, Sharon Booth admitted that she had not typed or prepared the wills and, prior to the hearing, had never seen the introductory paragraphs that are the notarial introductions and

---

[2] After making the forgoing pronouncement, the supreme court stated that "[a]ny language in previous jurisprudence which suggested otherwise is rejected." *Toney*, 226 So.3d 407. In *Succession of Ivey*, 17-653, p. 7 (La.App. 3 Cir. 2/21/18) 238 So.3d 532, 537, this court concluded that that express pronouncement made "it clear that earlier jurisprudence which treated deviations from the testamentary form requirements leniently when fraud was not an issue no longer applies."

statement. Michael concludes that by the fraudulent execution of these wills, he and his brother are now disinherited from property, the family residence, they would otherwise share equally with their sister.

In opposition to Michael's writ application, Rebecca argues that the fact that every page in the decedents' wills does not have a signature does not, in and of itself, render the wills invalid. She urges that despite the formalities required under La.Civ.Code art. 1577, there is a general presumption that a testament will is valid, which can only be rebutted with evidence that is exceptionally compelling.

Rebecca directs our attention to *In re Succession of Simonson*, 07-742, p. 5 (La.App. 5 Cir. 3/11/08), 982 So.2d 143, 146, where the appellate court reversed the lower court's invalidation of the will based upon its finding that there were no "dispositive, appointive, or directive provision[s]" on the unsigned page. Likewise, Rebecca submits that the lack of signatures of the first pages of her parents' wills does not impact their validity because there are no dispositions of property on those pages of either will.

Rebecca also refers this court to *Succession of Morgan*, 257 La. 380, 242 So.2d 551, 552-53 (1970), wherein the supreme court explained:

> There must be an attestation clause, or clause of declaration. However, its form is not sacrosanct: It may follow the form suggested in the statute or use a form substantially similar thereto. The attestation clause is designed to evince that the facts and circumstances of the confection and execution of the instrument conform to the statutory requirements. In construing the attestation clause of this type of will, this court has been most liberal in its determination of whether the clause complies in form and whether it evidences the requisites to supply validity to the instrument. See Succession of Eck, 233 La. 764, 98 So.2d 181 [(1957)]; Succession of Nourse, 234 La. 691, 101 So.2d 204 [(1958)]. In Succession of Thibodeaux, 238 La. 791, 116 So.2d 525 [(1959)], we reiterated a basic principle of construction of wills, that the validity of a will is to be maintained if possible. In construing an attestation clause we will not require strict, technical, and pedantic compliance in form or in language. Rather, we will examine the clause to see whether there is substantial adherence to form and whether it shows facts and

7

circumstances which evidence compliance with the formal requirements for testamentary validity.

Rebecca points to the following cases wherein wills were upheld despite deviations in the attestation clauses therein. *See Succession of Holbrook*, 13-1181 (La. 1/28/14), 144 So.3d 845 (undated attestation clause was valid because it fell clearly between two unambiguous references to the full date the will was executed); *Succession of Dawson*, 51,005 (La.App. 2 Cir. 11/16/16), 210 So.3d 421 (clause that did not specifically mention that the testator signed the will at the end was valid where the testator had signed at the bottom of page one after the provision bequeathing all property to his nephew and signed at the end of page two).

Finally, Rebecca maintains that Michael's allegations of fraud are baseless, as he failed to present witnesses or documentary evidence to show fraud and that his arguments are being made for the sole purpose of persuading this court to give less deference to the trial court's determination than the law provides. Rebecca further notes that the notary was the sister-in-law of the decedents and was found by the trial court to be "very credible, very forthright, and honest."

There is no dispute that Mr. and Mrs. Booth failed to sign two pages of their wills. Likewise, the attestation clauses herein lack the language that the wills were signed in the presence of the witnesses and notary on each page. *See* La.Civ.Code art. 1577. "[T]he Civil Code [] provides in no uncertain terms that '[t]he formalities prescribed for the execution of a testament **must** be observed or the testament is **absolutely null**.'" La. Civ.Code art. 1573 (emphasis added)." *Toney*, 226 So.3d at 401. Thus, we conclude that the attestation clauses at issue are not "substantially similar" to the form requirements proscribed by Article 1577 and thus the wills are absolute nullities. Moreover, "[w]hile extrinsic evidence may be used to resolve ambiguity in a testament, extrinsic evidence cannot cure a testament which is

materially defective on its face. The formalities prescribed for the execution of a testament **must** be observed or the testament is absolutely null. La. Civ.Code art. 1573." *Toney*, 226 So.3d at 408 (footnote omitted). Thus, it is of no moment that the trial court found the notary to be a credible witness. In conclusion, we are convinced that the trial court manifestly erred in finding that the wills were valid.

## DECREE

The judgment of the trial court declaring that the wills of Michelle Roy Booth and Robert Mark Booth, Sr. are "valid and shall be executed according to law," removing Michael as administrator of the decedents' successions and appointing Rebecca as the independent executrix of the decedents' succession is reversed. This matter is remanded to the trial court for further proceedings consistent with this opinion.

**JUDGMENT REVERSED. CASE REMANDED.**